GRAND ISLAND GAS CO. v. JOHN W. WEST ET AL.

[FILED FEBRUARY 25, 1890.]

1. **Cities:** CONTRACTS: OFFICERS INTERESTED IN.  All officers of
   a city are prohibited from being directly or indirectly interested
   in any contract or agreement to which the city, or any one for
   its benefit, is a party, and such contract may be avoided by the
   city.

2. ——: ——: ——: INJUNCTION.  The Grand Island Light
   & Fuel Company, a corporation, contracted with the city of G.
   I. to light its streets with electricity for a definite period, at a
   fixed price per month; at the time of the making of said con-
   tract, one W. was a member of the city council of G. I. and also
   a stockholder in and the secretary and treasurer of said corpora-
   tion.  *Held,* That the contract is illegal and that a taxpayer can
   maintain an action to cancel the same.

3. ——: ——: ——: BENEFITS ACCEPTED: PAYMENT RE-
   QUIRED.  *Held,* That inasmuch as the city has accepted the
   benefits of the contract, it must do equity, and to do equity the
   city must pay to the Light & Fuel Co., not exceeding the con-
   tract price, the reasonable value of the light received by it, prior
   to the commencement of the action, with seven per cent in-
   terest thereon.

APPEAL from the district court for Hall county.  Heard
below before HARRISON, J.

*O. A. Abbott,* and *R. R. Horth,* for appellants:

Appellee was a competing bidder for the contract, with
full knowledge of the alleged disability of its successful
competitor.  It was guilty of gross laches in failing to as-
sert its rights as a taxpayer in time, and is now estopped
to do so. (*Clark v. Dayton,* 6 Neb., 192; *Follmer v. Nuck-
olls County,* Id., 204; *Brown v. Merrick County,* 18 Id.,
355; *Tash v. Adams,* 10 Cush. [Mass.], 252; *Chamberlain
v. Lyndeborough,* 23 Am. & Eng. Corp. Cas., 609.)  The
Light & Fuel Co. would be entitled to compensation for

services rendered, even if it were not without fault in connection with the contract. (*Thomas v. Brownville, etc., R. Co.*, 109 U. S. 522.) The city should either have ratified the contract, and claimed its benefits, or repudiated it entirely; it could not do both. (Story, Agency, sec. 210 and cases.) Its passive acceptance of the benefits, and acquiescence in the performance, are negative acts of ratification, as binding as a formal instrument.

*Thompson Bros., contra:*

The contract was in violation of the statute (sec. 46, ch. 14, Comp. Stats., 1887), and contrary to public policy, and whether or not it was reasonable and just, was immaterial. (*State v. Jersey City*, 34 N. J. L., 390; *McCortle v. Bates*, 29 Ohio St., 419; *Gardner v. Ogden*, 22 N. Y., 332; *Butts v. Wood*, 37 Id., 317; *Smith v. Albany*, 61 N. Y., 444; *Bd. Com'rs v. Reynolds*, 44 Ind., 509; *Fort Wayne v. Rosenthal*, 75 Id., 156; *McGregor v. Logansport*, 79 Id., 166; *Mayor v. Huff*, 60 Ga., 222; *Thomas v. Richmond*, 12 Wall. [U. S.], 349; *Keating v. City of Kansas*, 84 Mo., 415; *Buck v. First Nat. Bk.*, 27 Mich., 293; *People v. Board*, 11 Id., 222; *Martin v. Wade*, 37 Cal., 68; 1 Dillon, Mun. Corp., 436; 29 Cent. Law J., 309, and cases cited.) There is a radical distinction between a contract which is illegal through failure to comply with a formality of law, and one which is in violation of the city charter and of public policy. (*Brown v. Merrick County*, 18 Neb., 364; *East St. Louis v. G. L. & C. Co.*, 98 Ill., 415; 1 Wharton, Contracts, sec. 43.) The latter cannot be ratified and neither a city nor a taxpayer can be estopped by laches from enjoining performance thereof. (*Reichard v. Warren County*, 31 Ia., 381; *Durango v. Pennington*, 8 Colo., 257; *Churchman v. Indianapolis*, 110 Ind., 259; 2 Rorer, Railroads, 943.) To allow appellants to recover on a *quantum meruit* would be offering a bonus for entering into illegal and prohibited contracts.

NORVAL, J.

On the 22d day of May, 1888, one of the defendants, the Grand Island Light & Fuel Company, entered into a written contract with the city of Grand Island to furnish the city electric light for an agreed price per month, for the period of one year, with the privilege of two years at the option of the city. The Light & Fuel Company furnished light under the contract during the months of July, August, September, October, and November of that year, and presented bills to the city council therefor, and the same were duly audited and allowed. The plaintiff, as a taxpayer, brought an action in the district court of Hall county against the various officers of the city and the Light & Fuel Company to restrain the city from paying the two warrants drawn in payment of the light so furnished to the city and to cancel and annul the said written contract, and to restrain the city from allowing or paying for any light so furnished, or thereafter furnished, under said contract. A trial was had, and a decree was rendered in favor of the plaintiff, restraining the city from paying the warrants in question, or for any light that had been or might be thereafter furnished, and restraining the Grand Island Light & Fuel Company from prosecuting any suits at law or in equity to recover any compensation for any light furnished, or that it might thereafter furnish. The defendants appeal.

It appears from the pleadings and the evidence that at the time of the entering into of said contract, one Charles Wasmer was a member of the city council of the city of Grand Island, and at the said time was a stockholder in and was the secretary and treasurer of the Grand Island Light & Fuel company, a corporation; that said Wasmer continued to be the secretary and treasurer of said company until about December 1, 1888; that the claims as allowed by the city were for the contract price; and that the plaintiff and other taxpayers protested against

the city recognizing said contract on the ground that said Wasmer was a stockholder and officer of said Light & Fuel Company.

It is claimed that the contract is void because the same was against public policy, and for the further reason that the contract was prohibited by statute. The precise question presented by the record for our consideration and decision has never been passed upon by this court. That an agent cannot act in a double capacity is elementary. The fact that the principal is a municipal corporation instead of a natural person, does not change the rule. The obligations and duties resting on a member of a city council are of such a character that he will not be allowed to reap any advantage his position may give, to speculate at the expense of the municipality. He must act solely for the welfare of the city. The temptation would be great to abuse the confidence reposed in him by the people if allowed to contract with it. That an action cannot be maintained on such a contract is well sustained by the authorities.

Judge Dillon in his work on Municipal Corporations, in discussing this question, says, sec. 444: "It is a well established and salutary rule in equity, that he who is entrusted with the business of others cannot be allowed to make such business an object of pecuniary profit to himself. This rule does not depend upon reasoning technical in its character and is not local in its application. It is based upon principles of reason, of morality, and of public policy. It has its foundation in the very constitution of our nature, for it has authoritatively been declared that a man cannot serve two masters, and is recognized and enforced wherever a well regulated system of jurisprudence prevails. One who has power, owing to the frailty of human nature, will be too readily seized with the inclination to use the opportunity for securing his own interest at the expense of that for which he is entrusted. It has, therefore, been said that the

wise policy of the law has put the sting of disability into
the temptation ·as a defensive weapon against the strength
of the danger which lies in the situation.   This conflict of
interest is the rock, for shunning which the disability under
consideration has obtained its force, by making that person
who has the one part entrusted to him incapable of acting
on the other side, that he may not be seduced by tempta-
tion and opportunity from the duty of his trust.   The law
will in no case permit persons who have undertaken a char-
acter or a charge to change or invert that character by leav-
ing it and acting for themselves in a business in which their
character binds them to act for others.   The application of
the rule may in some instances  appear to bear  hard upon
individuals who had committed no moral wrong; but it is
essential to the keeping of all parties filling a fiduciary
character to their duty to preserve the rule in its integrity,
and to apply it to every case which justly falls within its
principle.   The principle generally applicable to all offi-
cers and directors of a corporation is that they cannot enter
into contracts with such corporation to do any work for it,
nor can they subsequently derive any benefit personally
from such contract."

The council of the city of Albany contracted with one
of its members to furnish horses and carriages for the
parade at a 4th of July celebration.   He did so and
brought an action to recover payment.   It was held in
*Smith v. City of Albany,* 61 N. Y., 444, that he could not
recover.   The court in the opinion uses this language:
"The common council of the city of Albany, of which
the plaintiff was a member, were the agents of the city,
and while holding that relation to it each member of that
body was under such an obligation of absolute loyalty to
the interests of the city as prohibited any member of the
board from entering into any arrangement with his asso-
ciates by which his individual interests could come in con-
flict with the interests of his constituents, who are entitled

exclusively to such an exercise of his caution and judgment in their behalf as an ordinarily prudent man would exercise in his own business. In bargaining for the city he could not be one of a party acting as an employer, and become himself, by the same bargain, an employe."

In *People v. Township Board*, 11 Mich., 222, a contract similar to the one at bar was held void. We quote the following from the opinion in that case: "All public officers are agents, and their official powers are fiduciary. They are trusted with public functions for the good of the public; to protect, advance and promote its interests, and not their own. And a greater necessity exists than in private life for removing from them every inducement to abuse the trust reposed in them, as the temptations to which they are sometimes exposed are stronger and the risk of detection and exposure is less. A judge cannot hear and decide his own case, or one in which he is personally interested. He may decide it conscientiously and in accordance with law. But that is not enough. The law will not permit him to reap a personal advantage from an official act performed in favor of himself. * * * * We think it no exception to the rule we have stated that all the contractors were not members of the board of freeholders, or that those who were members were a minority of the board. The rule would not amount to much if it could be evaded in such way. It might almost as well not exist, as to exist with such an exception. The public would reap little or no benefit from it."

To the same effect is the case of *McGregor v. City of Logansport*, 79 Ind., 166. The following is the syllabus in the case: "It is unlawful for any officer of a city to be a party to or in any manner interested in, any contract or agreement with the city, whereby any liability or indebtedness may be incurred by the city. And the common council of a city cannot make a valid contract with the city judge for the use of his office as a city court room."

The following authorities are to the effect that contracts like the one at bar are against public policy and cannot be enforced in the courts: *Mayor, etc., of Macon v. Huff,* 60 Ga., 221; *Fort Wayne v. Rosenthal,* 75 Ind., 156; *Wardell v. U. P. R. R. Co.,* 103 U. S., 658; *Village of Dwight v. Palmer,* 74 Ill., 295.

For the purpose of preventing officers of a city from abusing the important trust committed to them, section 49 of the act (art. 2, ch, 14, Comp. Stats.) governing cities of the second class was passed, which reads: "No officer of any city shall be interested, directly or indirectly, in any contract to which the corporation, or any one for its benefit, is a party; and such interest in any such contract shall avoid the obligation thereof on the part of such corporation."

This section is broad and sweeping in its terms. It is obvious that a contract entered into with a city in which any of its officers have directly or *indirectly* a pecuniary interest, cannot be enforced against the corporation. Wasmer being a stockholder and officer of the Light & Fuel Company and also a member of the city council when the contract was entered into, brings the case clearly within the purview of the statute. Whether an action on a *quantum meruit* could be maintained does not arise in this case, and we express no opinion thereon. What we do hold, is that an action cannot be maintained against the city on such a contract, and where the contract has not been performed, a taxpayer may maintain an action to restrain the enforcement thereof. Where, as in the case at bar, the contract has been in part executed and the city has received benefits under it, the contract will not be canceled without the city returning the benefits it has accepted. It would be of the highest degree inequitable and unjust to permit the city to repudiate the contract and retain the benefits.

It appears from the record before us that the Grand Island Light & Fuel Company, prior to the commence-

Grand Island Gas Co. v. West.

ment of this action in the lower court, had furnished
under its contract to the defendant city electric light for
five months, and for which the city audited two claims, one
for $291.33, and the other for $821.81, the payment of
which is enjoined by the decree of the district court.   The
undisputed evidence is that said sums are the reasonable
value of the light furnished the city under the contract.
We think the court erred in enjoining the payment of these
claims allowed by the city council.   The city has claimed
the benefit of the contract by appropriating the light thus
furnished, and it would be inequitable to cancel the con-
tract without restoring to the Light & Fuel Company, not
exceeding the contract price, the reasonable value of the
light thus appropriated prior to the bringing of this suit.
It is a familiar rule that he who seeks equity must do
equity.   The fact that the contract under which the light
was furnished was illegal, can make no difference.   It does
not relieve the municipality from being just.

In *Eiseman v. Gallagher*, 24 Neb., 79, it was held that
"where a borrower goes into a court of equity to seek re-
lief from an usurious contract, he must tender the amount
of the principal and lawful interest, and it is the duty of
the court in granting relief to render a decree for the actual
amount of the loan, with 7 per cent interest thereon."

The case of *Mayor, etc., v. Huff*, 60 Ga., 221, is quite in
point.   In that case Huff, while mayor of Macon, con-
tracted with the city council to lease the city park for five
years, and, for an annual sum paid him, to fence, drain, and
keep the same in repair for that period.   An action was
brought to annul the contract.   While it was held void,
the city was compelled to reimburse Huff for what he had
expended.   We quote the third point of the syllabus
in that case: "Equity, however, requires every litigant
who seeks her aid to do equity; and inasmuch as the de-
fendant has expended large sums of money in fencing,
levying, draining, and ornamenting the park, of which the

city has received the benefit, equity will not interpose in behalf of the complainant to annul and set aside the contract, though thus illegal, unless the complainant shall first do equity, and to do equity the city must pay the defendant the money so expended and interest thereon, and thus restore him, as far as practicable, to his *statu quo*, in the absence of actual fraud on his part."

The same principle was fully recognized in the case of *Turner et al. v. Cruzen et al.*, 30 N. W. Rep. [Iowa], 483. That was an action brought by a taxpayer of Adams county to cancel a contract entered into between the county and the defendant Cruzen, whereby the county purchased of him a farm for the use of the county as a poor farm, for the agreed price of $8,800, and also to restrain the treasurer of the county from paying certain warrants issued under the contract. The purchase was unauthorized, having been made without a vote of the people. Chief Justice Adams, in the opinion in that case, says: "It may be that the intention in decreeing the invalidity of the contract was merely to afford a basis for enjoining the payment of warrants issued for a part of the purchase money. If this is so, then the court proceeded upon the theory that the county could be relieved of a part of the burden of its contract, while retaining the entire benefit of it. Of such decree the county could not, of course, complain. But such a decree cannot, in our opinion, be sustained. It appears to us to be well settled as a rule, with one exception, that, where the consideration received by a corporation under an *ultra vires* contract can be restored, a court of equity will not relieve the corporation, as against the contract, without providing for a restoration of the consideration." The following authorities sustain the same equitable doctrine: *Co. Com'rs Lucas Co. v. Hunt*, 5 O. St., 488; *Argenti v. San Francisco*, 16 Cal., 282.

The decree of the district court, therefore, should have required the city to pay the two warrants issued on the

claims allowed, and also to pay, not exceeding the contract price, the reasonable value of all light furnished the city under the contract up to the commencement of this action in the court below, with 7 per cent interest thereon, first deducting the amounts of said warrants.

It is claimed that because the other members of the city council, at the time of the letting of the contract, knew that Wasmer was a stockholder of the company, the contract is valid. This is certainly untenable. The right of the city or a taxpayer to avoid the contract is not affected by the fact that no wrong was practiced upon the city.

The plaintiff has not been guilty of such laches as to bar it from maintaining this suit. The allegations and proof are that the plaintiff continually protested against the performance of the contract. It was diligent in the assertion of its rights as a taxpayer.

It is also urged that the action of the council, in extending the time of performance of the contract and in auditing and allowing the claims for the light furnished, was an affirmance and ratification of the contract. During all this time Mr. Wasmer remained as a member of the city council and also a stockholder in the Light & Fuel Company; and it is clear if the council could not make a valid contract in the first instance on account of the interest of one of its members in the contract, it could not make it valid by any subsequent acts of the council while that interest remained. The evidence shows that Mr. Wasmer resigned as secretary and treasurer of the company before the claims were allowed, but we find no evidence in the bill of exceptions that he had ceased to be a stockholder.

The decree of the district court is therefore modified in accordance with the views herein expressed, and as thus modified is affirmed.

JUDGMENT ACCORDINGLY.

THE other judges concur.