CALL PUBLISHING CO. V. CITY OF LINCOLN.

[FILED MARCH 19, 1890.]

1. **Cities:** PUBLIC PRINTING: OFFICERS: CONTRACTS. Neither the duty nor the power to contract for the publication of notices, claims, advertisements, proclamations, reports, or ordinances is imposed by the terms of charter of cities of the first class upon the city, the mayor, and council, or either, or any officer of the city.

2. ———: ———: ———: ———. No member of the city council as committeeman, or otherwise, has legal power or right, nor is it his duty to designate the person who shall publish, or the newspaper in which shall be printed, any notice or other matter for the city.

3. ———: ———: ———: QUANTUM MERUIT. Notices and other matter published by a corporation, in which a city councilman is a stockholder, *held* to be legal, and such corporation entitled to pay therefor from the city.

ERROR to the district court for Lancaster county. Tried below before FIELD, J.

*Charles L. Hall,* for plaintiff in error:

The holdings in *Smith v. Albany,* 61 N. Y., 444, *Long v. Boone,* 36 Ind., 60, and *Currie v. Sch. Dist.,* 35 Minn., 165, are not sustained by the weight of authority. Contracts like the one under discussion are but voidable at

most, and then only for fraud and collusion, in the absence of which they will be enforced. (*Mayor v. Muzzy*, 33 Mich., 61; *Albright v. Chester*, 9 Rich. L. [S. Car.], 399; *Junkins v. Sch. Dist.*, 39 Me., 222; *Geer v. Sch. Dist.*, 6 Vt., 76; *Rogers v. Danby, etc., Soc.*, 19 Id., 187; *Hayward v. Pilgrim Soc.*, 21 Pick. [Mass.], 270; *Buell v. Buckingham*, 16 Ia., 284.) The claim does not come within the provisions of sec. 46, ch. 14, Laws, 1889. The term contract is there used only in reference to work which the city officers fix the price of at their discretion, supervise during its progress, and may accept or reject on completion. In this instance the law requires the work to be done and fixes the maximum price therefor. *Village of Dwight v. Palmer*, cited by defendant in error, was rendered under a statute much broader than sec. 46. Plaintiff can at least recover on a *quantum meruit*. (*Mayor v. Huff*, 60 Ga., 226.) The statute is highly penal; it takes private property for public use without just compensation and should not be extended by implication. (*City of Lawrence v. Killam*, 11 Kan., 499; *Dickenson v. State*, 20 Neb., 81.)

*G. M. Lambertson*, and *H. J. Whitmore, contra:*

The employment of plaintiff in error was in effect a contract made by an agent of the city with himself, and is therefore void. (*Port v. Russell*, 36 Ind., 60; *People v. Overyssel*, 11 Mich., 222; *Currie v. School District*, 35 Minn., 165; *Smith v. Albany*, 61 N. Y., 444; *Gardner v. Ogden*, 22 Id., 332; *Butts v. Wood*, 37 Id., 317; *Collier v. Swindle*, 6 Grant [Can.], 282; *Wardell v. R. Co*, 103 U. S., 658; *Marsh v. Whitmore*, 21 Wall. [U. S.], 183; *Michoud v. Girod*, 4 How. [U. S.], 555; Dillon, Munic. Cor., sec. 444. *Mayor v. Muzzy*, cited by plaintiff in error, is not in point. Recovery is prohibited by a statute which has its counterpart in those of many other states. Such contracts are prohibited in: Arkansas, sec. 3330, Laws, 1874; Arizona, secs. 3062–64, Civil Code, 1887; California, secs.

920 and 922; Colorado, sec. 3359, Laws, 1883; Idaho; Illinois; Indiana, sec. 3104, Laws, 1888; Iowa, sec. 670, Laws, 1888; Kansas, sec. 738, Comp. L., 1885; Maine, ch. 3, sec. 36, Rev. Stat., 1883; Minnesota, sec. 160, page 192, Laws, 1878; Michigan, sec. 2524, Laws, 1882; New York; Ohio, sec. 2699, Laws 1886; Pennsylvania, ch. 2, B. & P. Digest, sec. 21, page 1216; Tennessee, secs. 1623 and 1674, Laws, 1884; Texas, sec. 495, page 190, vol. 1, Sayles Stats.; Utah, sec. 1770, page 635, Laws, 1888; Wisconsin. In Missouri the offending official forfeits his office. In Nebraska, Kansas, Wisconsin, Indiana, and Maine such contracts are declared to be void. In Arizona and California they are voidable. Nowhere has the constitutionality of these statutes been questioned. They have been sustained in *Moore v. Durgin*, 68 Me., 148; *Deering v. Saco*, 68 Id., 325; *City of Ft. Wayne v. Rosenthal*, 75 Id., 156; *McGregor v. City of Logansport*, 79 Ind., 166; *Village of Dwight v. Palmer*, 74 Ill., 295; *City of Anna v. O'Calahan*, 3 Ill. App., 176. It is no defense that the city has received the benefit. (*Trustees of Belleview v. Hohn*, 82 Ky., 1.) There are no benefits in this case which the city can return, nor is it bound to restore property received. (*City of Detroit v. Paving Co.*, 36 Mich., 335; *City of Ft. Wayne v. Rosenthal*, and *Village of Dwight v. Palmer*, *supra*.) The law never implies an obligation to do what it forbids one to agree to do. (*Brady v. Mayor*, 16 How. Pr. [N. Y.], 432.)


COBB, CH. J.


The Call Publishing Company, a corporation issuing a daily and weekly newspaper, sued the city of Lincoln to recover the value of printing and publishing certain ordinances, advertisements, and public notices, required by law to be published, from July 16 to October 13, 1889, inclusive, at the legal rate of twenty-five cents per square,

amounting to $159.25, which, having been advertised, was presented to the city council for allowance and was rejected, from which appeal was taken to the district court.

The petition alleges that one of the councilmen of the city, H. M. Bushnell, is a stockholder in the plaintiff's corporation, and was chairman of the council's committee on printing during the time of the publication of the ordinances, advertisements, and public notices mentioned, which were so ordered, printed, and published according to the established usage and customs of the defendant.

The defendant demurred on the grounds:

1. That a recovery would be against public policy.

2. That it would be against the provisions of sec. 46, chap. 14, of the Session Laws of 1889, which were sustained by the court, and the petition dismissed at plaintiff's costs.

The plaintiff's grounds of error are that the court erred in sustaining the demurrer, and in dismissing the petition at the plaintiff's costs.

While it may have been, and probably was, the general intention of the legislature in framing and passing the act entitled "An act to incorporate cities of the first class, and regulating their duties, powers, government, and remedies," approved March 29, 1889, popularly known as the "Lincoln city charter," to provide that all supplies furnished, and all services rendered to the city, except the services of the officers therein provided for, should be furnished or rendered under express written contract upon competitive bids, or proposals, therefor, yet I am unable to find any section, clause, or provision which expressly, or by implication, makes it the duty of any officer or department of the city to enter into contract for the publication of any of the notices therein required to be made, or for the printing, the maximum price of which is limited by the 93d section of the act. But, on the contrary, a consideration of the several provisions of the act, and especially of said section 93, leads me to the conclusion that the legis-

lature did not intend that it should be imperative upon the
city government to enter into contract upon competitive
propositions for its necessary printing or publishing.

In section 29 of the act, the city engineer is required to
"make estimate of the cost of labor and materials which
may be done or furnished by contract with the city, and
make all surveys, estimates, and calculations necessary to
be made for the establishment of grades, building of cul-
verts, sewers, waterworks, bridges, curbings, and gutters,
and erection and repair of buildings," etc., and said section
further provides that before the city council shall make
any contract for the above character of works, or any other
work, or improvement, to cost over two hundred dollars,
an estimate of the total cost, together with detailed plans
and specifications, shall be made by the city engineer, etc.;
"and in advertising for bids for any such work," etc., "such
advertisement shall be at least ten days in some daily news-
paper of general circulation published in the city." Section
36, amongst other things, provides that "No claim aris-
ing on contract or tort exceeding the sum of $25 shall be
allowed until the same shall have been read in open council
and the name of the claimant and the amount and nature
of the claim published once in a daily newspaper published
and of general circulation in said city." Section 40 pro-
vides for the passage annually of an ordinance to be termed
the "annual appropriation bill," and section 41 provides
that before such annual appropriation bill shall be passed
the council shall prepare an estimate of the probable
amount of money necessary for all purposes, to be raised in
said city during the fiscal year, etc., and shall cause the
same to be published for one week in some daily newspaper
published and of general circulation in the city. Section
48 provides that all ordinances of a general nature shall,
within one month after they are passed, be published in
some newspaper published within the city, or in pamphlet
form, etc. There are several other provisions of the act

providing for the publication of notices, all in substantially the same language; and finally, section 93 is as follows: " The mayor or council shall not allow or pay for the printing of any notice, advertisement, or publication in any newspaper any greater sum or rate than twenty-five cents per square, of unleaded nonpareil type; and such bill shall first be audited by the city clerk." The language of these provisions, considered separately or together, repels the idea, or conclusion, that such publication or printing is to be contracted for, and as to what officer of the city upon whom shall rest the duty or responsibility of selecting the newspaper in which such publications shall be made, or the person who shall do such printing, the act is absolutely silent. The only conditions seem to be, that the paper in which the notices are published shall be a daily newspaper published and of general circulation in the city ; that the notice shall be printed in nonpareil type; that the matter shall be unleaded; and that the charge or account therefor shall not be at a rate exceeding twenty-five cents per square, and shall be audited by the city clerk.

If the printing and publishing, for which this action was brought, had been done under contract with the city, the case would fall within the reason and authority of, and be governed by, the case of *Grand Island Gas Co. v. West*, 28 Neb., 852, decided at the present term; but the same not having been done under contract, and there being no provision of law under which it could have been so done, neither that case nor the cases there cited are deemed to be applicable.

Section 46 of the act under consideration provides that " No officer of any city shall be interested, directly or indirectly, in any contract to which the corporation, or any one for its benefit, is a party ; and such interest in any such contract shall avoid the obligation thereof on the part of the corporation ; nor shall any officer of the city be interested, directly or indirectly, in any contract to perform any

work for or furnish any material to any contractor or sub-contractor intended for use or which shall be used by the latter in the performance of any contract with the city; nor shall any officer of the city, directly or indirectly, sell or furnish any material to such contractor, or subcontractor, in the performance of any such contract, or by any employe of the city in the performance thereof. Any violation of the provisions of this section shall avoid the obligation of every contract on the part of the city and defeat any recovery for any material so sold or furnished," etc. By a careful reading of this section, it will be observed that it was not the intention of the legislature to declare the contracts therein referred to absolutely void, but to "avoid the obligations of such contract on the part of the city and defeat any recovery for any material so sold or furnished," etc. The purpose of this peculiar language is quite obvious. It was to leave life in such contracts that they might be enforced by the city, should it be deemed to its advantage to do so, but at the same time to deprive them of all binding force as against the city. I am not called upon in the case now under consideration to discuss or pass upon the proposition as to the power of the legislature by positive enactment to impress a character of fraud upon a certain class of contracts as to the rights of one of the contracting parties and leave the rights of the other contracting party, without regard to knowledge or notice, unaffected and unsullied. I do not say that such power does not exist when, as in this section, it is directed alone to express contracts; but I do hold that the legislative power does not exist to impress such a quality upon an implied contract, or an assumpsit, even by express and direct language—certainly not by implication. I therefore conclude that the plaintiff's cause of action is not affected, nor his recovery forbidden, by the terms of the city charter. The question remains, whether the common law interposes an insuperable obstacle to a recovery in this case.

This action is brought for services in the printing and publishing by the plaintiff (company) for the defendant (city) of certain notices, claims, advertisements, proclamations, reports, and ordinances. It appears from the petition that, as a matter of fact, H. M. Bushnell, a member of the city council, and chairman of the committee on printing, "brought" these notices, claims, advertisements, etc., to the plaintiff corporation, of which he was at that time a stockholder, to be printed and published, and it is claimed that it was his duty as such councilman and committeeman and chairman to procure such printing and publishing to be done. I do not so understand the law. As above stated, while it is made a condition precedent to the allowance of claims exceeding $25 that they be published, and many other notices and matters are required to be published, yet the charter nowhere expressly points out the officer or person whose duty or privilege it is to select the person who shall do the printing, or the newspaper in which the notice or other thing shall be published. The charter requires many things to be done by the "mayor and council," but it also points out the manner in which these things shall be done, to-wit, by ordinance, and in a few instances by resolution or vote. Aside from his duties in connection with the council, the mayor has many executive duties to perform; but the councilmen, either collectively or individually, none whatever. It therefore follows that if Councilman Bushnell, either as chairman of the committee on printing or as a councilman, "brought" these notices and other matters to the plaintiff to be printed and published, it was a gratuitous act on his part and it had no effect upon the legal aspect of plaintiff's claim. But it is claimed that it would be against public policy to hold the city legally liable for this work, a member of the city council being a stockholder of the corporation doing it and prosecuting the claim therefor. This proposition depends for its force upon the idea that Bushnell, by virtue

of his official position, could legally control and direct this expenditure of the city to the printing office of the plaintiff. I have shown, at least to my own satisfaction, that he could not. If, instead of a councilman, the city attorney, the chief of police, or a policeman had been a stockholder of the plaintiff company, would considerations of public policy prevent a recovery? It will scarcely be claimed that they would, and yet neither of these officers have less right or legal power to designate the person who shall print or the newspaper which shall publish for the city than a councilman has, whether a member of the committee on printing or not. It is scarcely necessary to say that the approval of the account by the chairman of the committee on printing is a mere nullity, as the charter requires such accounts to be approved by the city clerk, and not by any other officer or person.

I know of no rule of public policy that denies to a person performing a necessary labor for another, be that a natural person or a corporation, the right to his pay therefor; on the contrary, this right is too important to be overcome by a mere sentiment and technical theory of corporate independence.

Again, if the publication of these notices and other matters in plaintiff's newspaper was held illegal, for the purpose of payment therefor it would logically follow that they be held illegal for all purposes, and as many important acts of the city depend for their legality upon such publication, it is impossible to foresee the mischief which might result from such holding. I therefore conclude that no consideration of public policy will justify the refusal of a *quantum meruit* to the plaintiff for the services performed.

The judgment of the district court is therefore reversed and the cause remanded for further proceedings according to law.

REVERSED AND REMANDED.

THE other judges concur.