VILLAGE OF BELLEVUE, APPELLANT, v. BOHEMIL STERBA ET AL., APPELLEES: WILLIAM N. LESHOVSKY ET AL., INTERVENERS, APPELLANTS.

1 N. W. (2d) 820

FILED JANUARY 9, 1942. No. 31231.

*William R. Patrick,* for appellants.

*Brown, Crossman, West, Barton & Fitch* and *Edward A. Nelson, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

CARTER, J.

This was an action brought by the village of Bellevue to recover a judgment against its former trustees and officers for money alleged to have been unlawfully paid to one Bohemil Sterba while he was a member of the board of trustees of the village. The interveners were taxpayers of the village, interested in protecting the funds of the village. A trial was had to a jury who returned a verdict for the defendants. Plaintiff and interveners appeal.

The record shows that a new school building was being constructed in Bellevue in 1936. The school building required a sanitary sewer connection and outlet. The closest connection to the village sewer was some eleven blocks away. The village, having no funds available to construct the sewer, procured a Works Progress Administration grant for the construction of the sewer. The total estimated cost was $12,256.25, of which the village was to contribute $2,416.25. Superintendence and control of the project were

to be in the Works Progress Administration. During the same year the village procured a Works Progress Administration grant to construct 3,400 feet of water mains at an estimated cost of $2,998 of which the village was to contribute $1,060. Superintendence and control of this project were likewise to be in the Works Progress Administration.

The record shows that during the year 1937 the defendant Sterba received three warrants on the general fund of the village in the amount of $500 and one warrant on the water fund in the amount of $25.25. It is the legality of the payment of these warrants that constitutes the controversy in this case. It is admitted that, during the times herein mentioned, Sterba was a member of the board of trustees of the village; that the payments so made were not included in an estimate of expense for any fiscal year, nor were they included in any appropriation ordinance or sanctioned by a majority of the voters of the village, either by petition or special election; and that Sterba filed no written verified claim for any of said payments.

Defendant Sterba contends that he was employed as superintendent of the sewer and water projects by the Works Progress Administration. It is then urged that the village did not pay the sponsor's contributions to the projects to the Works Progress Administration because of the delay that it would cause in getting the construction under way and that the making of such payments direct was waived. The implication is that the village was to pay Sterba out of the amount it agreed to pay. There is, however, no contract or written evidence of any such arrangement with the Works Progress Administration. There is no competent proof in the record of any agreement that the village was to provide work and labor and charge it to the amount the village agreed to contribute to the project. But if such an agreement did exist, the prohibition of the statute was a bar to the employment of Sterba. There is some evidence in the record that Sterba was employed by the Works Progress Administration. If so, it is the Works Progress Administration and not the village that is liable for his

services. There is no record of any kind showing that the Works Progress Administration assigned or authorized any expenditures by the village of any part or all of the amount which the village obligated itself to pay the Works Progress Administration on these projects. It is clear therefore that Sterba was either an employee of the Works Progress Administration to whom he must look for his pay, or he was employed by the village to perform services in its behalf.

Appellants contend that Sterba could not lawfully enter into a contract of employment with the village because of the provisions of section 17-517, Comp. St. 1929, which provides: "No officer of any city or village shall be interested, directly or indirectly, in any contract to which the corporation, or any one for its benefit, is a party; and any such interest in any such contract shall avoid the obligation thereof on the part of such corporation." This section has a salutary purpose—the insuring of honest and efficient village government. The prohibition against an officer of a village entering into contracts with the village is clear. It is urged, however, that Sterba was entitled under the law to recover for the reasonable value of the services he rendered the city. With this we cannot agree. Such a rule would defeat the very purpose of the statute. Where authority to create liability exists, but is irregularly exercised, a recovery quantum meruit may be had. *Western Chemical Co. v. Board of County Commissioners,* 130 Neb. 550, 264 N. W. 699. But when the creation of liability is absolutely forbidden, as in the instant case, the quantum meruit rule can have no application.

The proper conclusion, it seems to us, is comparatively simple. If Sterba was employed by the Works Progress Administration, he must look to that agency for his pay. Certainly, the Works Progress Administration is without authority to hire employees to perform services for the village or to expend village funds. If the village attempted to employ a member of the village board of trustees, it violated the provisions of the statute hereinbefore men-

tioned. Sterba was incompetent under the statute to make such a contract, and the statutory penalty for so doing is the complete avoidance of the obligation on the part of the village. The statute contemplates that an officer of the village might not exercise his best judgment in the handling of the business of the village if even the hope of personal benefit exists. In accepting the position of trustee one is legally bound to forswear business transactions with the village. If after assuming the office it is discovered that the prohibition of the statute appears too severe, a resignation of the office will provide adequate relief from the burden of the statute. We think the purpose of the statute is to require unselfish and unbiased service from its duly elected officers. To construe the statute as contended for by defendants, and make applicable the relief urged by them, would in effect destroy the beneficent purposes of the law.

We think the trial court erred in failing to direct a verdict in favor of the village.

REVERSED.