ORLANDO R. NEISIUS, APPELLANT, V. JOHN REX HENRY ET AL., APPELLEES.

5 N. W. (2d) 291

FILED JULY 31, 1942. No. 31394.

*Cook & Cook* and *George B. Boland*, for appellant.

*Abbott, Dunlap & Abbott, Munger & Rhodes* and *Fred H. Richards, Jr., contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

CARTER, J.

This suit was commenced by the plaintiff as a resident taxpayer of the city of Fremont to recover a judgment against John Rex Henry and the United States Fidelity & Guaranty Company, surety on his bond, for money paid Henry in excess of his statutory salary as chairman of the board of public works of the city of Fremont. By stipulation of the parties, a pending suit for an injunction was incorporated into the present action by amendment to the prayer of the petition, which amendment prayed for an injunction against the city of Fremont, restraining the payment of any funds of the city to Henry as compensation in excess of his salary as chairman of the board of public works. The trial court granted the injunction and denied a money judgment for the benefit of the city. Plaintiff appeals.

The record shows that plaintiff and others made formal demand upon the city of Fremont to institute a suit to recover back the alleged overpayments of salary before the commencement of this action, and that such demand was refused. Plaintiff, as a resident taxpayer, thereupon filed this suit for the benefit of the city of Fremont to recover such alleged overpayments of salary and to enjoin the future pay-

ment of similar compensation to Henry. It is not disputed that, during all the times that excessive payments of salary are alleged to have been made to Henry, the United States Fidelity & Guaranty Company was the surety on the various official bonds furnished by Henry as chairman of the board of public works.

The evidence shows that Henry served continuously as chairman of the board of public works from 1923 to the date of filing of this suit on July 12, 1940. Until 1925 the ordinances of the city provided for a water commissioner, which office included the duties of a light, heat and power commissioner. In 1925 the salary of the members of the board of public works was increased from $100 to $260 a year and the powers of active direction, supervision, control and general management of the city's utilities were enlarged by the abandonment of the office of water commissioner and the assignment of the duties of that office to the board of public works. Subsequent ordinances of the city provided that the board of public works should have the active direction, supervision, control and general management of the city's utilities, including the right to hire employees to perform the duties necessary to their proper operation. The board of public works was specifically authorized to purchase supplies, to enter into contracts for construction work and improvements authorized by the city council, to collect moneys due the various departments, and to do many other things pertaining to the operation of the city's utilities which do not require enumeration here.

An examination of the ordinances of the city reveal, therefore, that the board of public works was at all times after 1925 empowered with the active direction, supervision, control and general management of the power plant, and the light, heat and water systems, subject to the powers of the city council over it. It appears further that during this time the board of public works was empowered to hire employees and delegate duties and powers to them in carrying out the purposes and objects of the board of public works.

The evidence is clear that prior to August 11, 1927, the

board of public works performed all the duties of management, supervision and control, which the ordinances of the city and the action of the city council had delegated to it. It is not disputed that most of this work and responsibility was assumed by Henry as the chairman of the board.

On August 11, 1927, the board of public works, in the absence of Henry, suggested to the city council that a general manager was needed for the city light and power plant and suggested that Henry be appointed to the position with adequate compensation. On the same day the city council authorized the board of public works to employ Henry as general manager. On August 31, 1927, the board of public works fixed the salary of Henry as manager at $125 a month, beginning August 1, 1927. There is no dispute that during all of the time from August 1, 1927, to the time of filing this suit Henry had drawn $260 a year as chairman of the board of public works, in addition to the $125 a month as general manager.

It seems to us that the board of public works was at all times invested with the management, control and supervision of the water and light plant. The board was specifically authorized to hire employees to operate these utilities and, for the purposes of this suit, we will assume they had authority to designate one of such employees as manager. The question to be determined here is whether Henry could properly be designated as such manager with additional salary, and if not, whether he is obligated to return the additional salary thus collected.

It is contended that the contract to employ Henry as manager of the water and light plant was void under the provisions of section 17-517, Comp. St. 1929, which in part provides: "No officer of any city or village shall be interested, directly or indirectly, in any contract to which the corporation, or any one for its benefit, is a party; and any such interest in any such contract shall avoid the obligation thereof on the part of such corporation, nor shall any officer receive any pay or perquisites from the city other than his salary, as fixed by ordinance and this chapter."

It is argued by defendants that this statute does not by its terms, or by implication, render the contract void, but that on the contrary it is carefully worded so as to make it voidable only. If the contract be voidable only under this statute, some affirmative act on the part of the city would be required to terminate liability. We think the statute clearly expresses a contrary meaning. The use of the words "and any such interest in any such contract shall avoid the obligation thereof on the part of such corporation" does not import any affirmative action on the part of the city to avoid the obligation of the contract. The interest of the officer in the contract avoids *ipso facto* the obligation thereof on the part of the city.

In *Village of Bellevue v. Sterba,* 140 Neb. 744, 1 N. W. (2d) 820, this court in a similar case said: "Where a statute prohibits an officer of a village from having an interest in any contract with the village, and avoids the obligation of any such contract so made, it is void for all purposes, and any funds paid out because of such purported contract may be recovered back at the suit of the village or of a taxpayer suing in its behalf."

We think this decision to be controlling in the case at bar. Defendants, however, attack the soundness of the decision and urge that it is contrary to the well-established law of this state. An examination of the cases relied upon will be helpful in determining the correctness of this assertion.

In *Grand Island Gas Co. v. West,* 28 Neb. 852, 45 N. W. 242, the gas company entered into a contract with the city to furnish electric lights at an agreed price. A member of the city council was a stockholder and officer of the gas company. A taxpayer sought an injunction. The court held that the contract was unenforceable, but required the city to do equity by returning the benefits as a condition to the issuance of the injunction. We think the case is distinguishable. The suit was one in equity for an injunction, the granting of which is not wholly a writ of right as its issuance or refusal rests in the sound discretion of the court under the circumstances of the particular case. 32 C. J. 29.

By seeking relief in an equity court, plaintiff subjected himself to the sound discretion of the court in granting an injunction, and as the court required the plaintiff to do equity by returning the benefits received under the unenforceable contract, he was in no position to complain in this court. That this was the theory of the decision is evidenced by the statement in the opinion that "whether an action on a *quantum meruit* could be maintained does not arise in this case, and we express no opinion thereon." Whether the court properly applied the rule requiring one seeking relief in a court of equity to first do equity himself is not a matter of concern here. We find nothing in this case directly in conflict with the holding in the *Sterba* case.

In *Call Publishing Co. v. City of Lincoln*, 29 Neb. 149, 45 N. W. 245, the court, in construing identical language in a former statute, disposed of the whole question without citation of authority in the following language: "The purpose of this peculiar language is quite obvious. It was to leave life in such contracts that they might be enforced by the city, should it be deemed to its advantage to do so, but at the same time to deprive them of all binding force as against the city." The reasoning indulged in fails to give effect to the words "and any such interest in any such contract shall avoid the obligation thereof on the part of such corporation." To "avoid the obligation" is plain language and clearly implies relief from all liability, not only as to unperformed portions of the contract, but from the whole transaction from its very inception. While we disapprove the reasoning of this decision, it does purport to interpret the statute in a way which conflicts with the *Sterba* case. We therefore feel obliged to overrule it in so far as it contravenes the rule announced in *Village of Bellevue v. Sterba, supra.*

In *Scheschy v. Binkley*, 124 Neb. 87, 245 N. W. 267, plaintiff brought an equitable action for an accounting and to recover for funds paid to school board members who performed services for the district in erecting and repairing temporary school buildings. The district was required to

pay for benefits received. We think this decision was correct, but that it has no application to the case at bar. The applicable statute provided that "No school officer shall be a party to any school contract for building or furnishing supplies, except in his official capacity as a member of the board." Comp. St. 1929, sec. 79-513. No attempt was made by the legislature to avoid the obligation of the contract as is done by section 17-517, Comp. St. 1929. A school officer may not be a party to a school contract except in his official capacity, but he is not foreclosed of any right he may have exclusive of the contract. Consequently, if the contract is unenforceable, no reason exists why a recovery *quantum meruit* could not be had. We do not think that this case is a controlling authority in the case at bar.

The last case cited and relied upon is *Darnell v. City of Broken Bow,* 139 Neb. 844, 299 N. W. 274. In this case it appears that a city attorney resigned his office and entered into a contract to foreclose tax sale certificates held by the city for compensation based on an aliquot part of the funds derived from such foreclosure actions. The court held that the city attorney had in fact resigned. The reason for invalidating the contract was that it is against public policy for a city to enter into a contract of employment with an attorney to foreclose tax sale certificates and pay a certain percentage or aliquot part of the public revenues affected thereby to be deducted from the proceeds of the sales. We think the opinion correctly holds that when such a contract is void because of provisions for unlawful compensation contained in it, and not because of any official relationship between the city and the attorney, such attorney, in a proper action, is entitled to compensation on a *quantum meruit* basis. This case is based on the rule, consistently upheld by this court, that where the power to contract exists but was irregularly exercised, a recovery *quantum meruit* may be had. *Western Chemical Co. v. Board of County Commissioners,* 130 Neb. 550, 264 N. W. 699. We find nothing in this case which conflicts with the rule announced in the *Sterba* case.

There is much distinction between a contract with a city which is the result of an illegal exercise of an authorized power and one which is illegal because of a statutory disqualification to make a contract, or to create liability. The former may be ratified or a suit *quantum meruit* maintained. But where one is prohibited by statute from entering into a contract, and the obligation of the contract avoided for so doing, an action *quantum meruit* cannot be maintained. It would amount to nothing more than complete protection to one who would carelessly disregard or intentionally violate the law. Thus the beneficent purposes of the statute would be circumvented within the letter of the law, and the intent of the legislature as effectually thwarted by a strained interpretation of the statute. We conclude therefore that the construction placed upon section 17-517, Comp. St. 1929, in the case of *Village of Bellevue v. Sterba, supra,* is correct and it is reaffirmed.

But whether *Village of Bellevue v. Sterba, supra,* is in all respects applicable to the case at bar or not, there is another reason why the contract between Henry and the board of public works is void.

The record is clear that the active supervision, control and management of the waterworks, power plant and lighting systems were placed with the board of public works. The defendant Henry, before his employment as manager, performed most of the managerial duties for the board of public works. For this work he received as compensation the sum of $260 a year, the maximum amount permitted by the applicable statutes and ordinances. After the appointment of Henry as manager, he continued to perform the same managerial duties, although he devoted more time to the job. Assuming that the board of public works had authority to employ a manager, we think it was precluded from employing Henry under well-established rules of law.

It seems to us that, as long as Henry held the position of chairman of the board of public works, he was bound to perform the duties of that office for the statutory salary of $260. When the powers of the water commissioner were

merged with those of the board of public works, the salary of the board members was increased from $100 to $260 a year. It must be conclusively presumed that the increased salary was compensation for additional duties. Henry accepted the appointment and thereby obligated himself to actively supervise, control and manage the utilities in question for the designated salary. Any attempt to divide his duties between two jobs and to fix a salary for the new position thus created must be condemned as unlawful. If Henry performed additional duties germane to the office he held, and devoted more time to their performance, it must be conclusively presumed that they were so performed for the salary fixed by the statute of the state and ordinances of the city, or that they were gratuitous. The provision of section 17-517, Comp. St. 1929, providing in substance that no officer shall receive any pay or perquisites from the city other than his salary, as fixed by ordinance and this chapter, is a complete bar to the payment of a salary to Henry as general manager while he occupied the position of chairman of the board of public works. Section 16-322, Comp. St. 1929, is also a bar to the receiving of increased compensation during the term for which he was appointed. It is clear that, as a matter of law, the members of an official board cannot employ one of their own number to assist them. Even in the absence of statute, public policy and sound morals forbid a public officer from receiving compensation other than the salary prescribed by law. When additional pay or perquisites are accepted by a public officer for performance of duties germane to his office, a taxpayer has a right to insist that the funds wrongfully received shall be returned to the public treasury. And this right is not nullified by the fact that the reasonable value of the services exceeded the amount received. The value of the services is not material. It is a general rule that an officer who has made a contract for salary, additional to that provided by law, cannot recover *quantum meruit*.

In a case somewhat similar this court used language which is applicable here: "As void acts inhibited by statute, they

were open to collateral attack. As direct violations of the city charter, they were not the acts of the city, but individual trespasses beyond official power and municipal legislation. The city was at liberty to rely on its charter, to denounce those acts as invalid, and to resort to the official bond of the city clerk for redress to the extent of the damages. Estoppel and all other defenses pleaded are without support in law or evidence." *City of Scottsbluff v. Southern Surety Co.*, 124 Neb. 260, 246 N. W. 346.

In *Stone v. Bevans*, 88 Minn. 127, 92 N. W. 520, the court said: "It is therefore immaterial, in view of the admitted facts, that the trial court refused to receive evidence tending to show that the services rendered by the president of the council were meritorious and beneficial, since he had no right to negotiate for or enter into the same with the official body of which he was a member at the time, and it is not now an open question in this state that money thus voted by a municipal body to one of its members may be recovered for the municipality at the suit of a taxpayer."

The trial court, therefore, properly enjoined the city from making further payments of salary to Henry as general manager, while he occupied the position of chairman of the board of public works, on the ground that the contract was against public policy and void. The trial court was, however, clearly in error in permitting a recovery *quantum meruit*. Whether the transaction be treated as one absolutely inhibited by law and the obligation thereof terminated from its inception as provided by section 17-517, Comp. St. 1929, or whether it be treated as additional pay or perquisites prohibited by the same section of the statute, or even if section 16-322, Comp. St. 1929, be resorted to, a recovery *quantum meruit* cannot be had.

Defendants urge that plaintiff's right of recovery is barred by laches and the statute of limitations. In a consideration of these questions it must be conceded that plaintiff can enforce no greater rights on behalf of the city than the city itself might enforce, and any defense which might be interposed in an action by the city itself is available to the de-

fendant in a suit brought by a taxpayer. With this in mind, can the alleged laches of the city be asserted?

We do not think that laches sufficient to bar recovery has been established in the present case. The defendant Henry commenced drawing the additional pay in 1927 and had continued to draw it until this suit was filed in 1940. Taxpayers had a right to assume that its officials would act with due regard to limitations imposed by law. We fail to see how it would be inequitable to enforce the liability. Laches is not based on the mere passage of time as is a statute of limitations; it is founded upon inequity resulting from changed conditions of the property or the parties. Defendant Henry testifies that the death of two members of the board of public works who served at the time Henry was appointed general manager, and for many years thereafter, made it difficult for him to establish the duties he performed and the benefits he rendered to the city of Fremont. This evidence is not sufficient to invoke the doctrine of laches, for the reason that it would have been immaterial in any event. Defendants have not been injured by the delay and the situation has not materially changed. Plaintiff's evidence is that he had no actual knowledge of the true facts until December, 1939. A taxpayer cannot be expected to inquire into the business of a city with the same energy and promptness as would be expected of him in his own affairs. He has a right to rely upon the integrity of elected officials and he cannot be penalized for his own delay until he has knowledge of the wrong. Under the rules announced in *Schurman v. Pegau,* 136 Neb. 628, 286 N. W. 921, laches cannot be invoked as a defense. Neither do we find any reason for the invocation of an estoppel against the city or its taxpayers in bringing the action.

Defendants plead the statute of limitations as a defense. We are of the opinion that all amounts received by Henry more than ten years prior to July 12, 1940, the date of filing this suit, are barred by the provisions of section 20-209, Comp. St. 1929.

It is further contended that the fact that the city was en-

gaged in its proprietary as distinguished from its governmental functions makes inapplicable the limitations and restrictions on the power of a municipality to contract as contained in the statutes. The fact, however, that a city is placed in the same class as a private corporation when it enters upon its proprietary functions is of no assistance to the plaintiff. All corporations, whether private or public, are creatures of the legislature and subject to its will. General statutory limitations and restrictions upon the powers of a municipality ordinarily apply to proprietary as well as governmental functions.

It is further urged that a suit such as the one at bar is controlled by equitable principles. As a general proposition, this statement is correct for the reason that courts of equity apply equitable rules wherever in conscience and good morals they can do so. But it will not interfere in the enforcement of a positive statute enacted for the protection of the public in the safeguarding of public funds. Applicable language was used in *Northern Trust Co. v. Snyder,* 113 Wis. 516, 89 N. W. 460, wherein the court said (p. 552) : "County boards, and other boards, councils, and all in official station, should learn the lesson that public revenues are not for private use, for dissipation under the forms of law in payment of illegal claims by or to the persons whom the people trust to guard and devote the same to the proper public use; that there is a power potent, if invoked seasonably, to compel restitution to the public treasury of money illegally, though by forms of law, withdrawn therefrom."

It is the policy of our statute to lessen the possibility of official infidelity by preventing unfaithful officers from enjoying the illegitimate benefits of official service. Whether the infidelity of the officers was due to indifference or wilful disregard of duty, the effect upon the taxpaying public is the same. The application of the rule may in some instances appear unduly harsh, especially where there has been no moral turpitude involved, as in the instant case. But the legislature has seen fit, in the exercise of legislative policy, to require one who is entrusted with the business of a mu-

nicipality not to make such business an object of pecuniary profit to himself and that one who disregards or violates the statute assumes the risks which the statute imposes. A person is not permitted to act for himself and another at the same time in the same matter where their interests might be in conflict. Two different obligations are thus created in the same person, one of interest and the other of duty. Too often interest prevails over duty to the detriment of the public. The legislature has attempted to protect the public by condemning transactions which bring about these conflicting relations where the interests of a municipality are concerned. Only a strict application of the statute to every case which properly falls within it will insure the beneficent result intended by the legislature in enacting the law.

The judgment of the district court is reversed and the cause remanded, with instructions to proceed with the accounting of all items of salary actually paid to the defendant Henry for the ten years immediately prior to July 12, 1940, and to thereafter enter judgment for the benefit of the city of Fremont against the defendants Henry and United States Fidelity & Guaranty Company for such amount, together with interest and costs. An attorney's fee of $350 is hereby allowed and taxed as costs against the defendant United States Fidelity & Guaranty Company.

REVERSED.