CHARLES M. CHAMBERLAIN V. WILLIAM H. WOOLSEY ET AL.*

FILED OCTOBER 22, 1902.  No. 11,950.

Commissioner's opinion, Department No. 3.

1. **Fraudulent Transfer.**  A failing debtor transferred his stock of merchandise in payment of two claims against him, of the aggregate amount of $1,821.54. The value of the property was estimated by witnesses at from $2,250 to $2,500, but immediately after the transfer it was seized by the sheriff, under process, and after advertisement, as upon execution, was sold for $1,-368.83. *Held,* That the disparity, if any, between the value of the property and the consideration of the transfer, was not so great as to justify the inference that the transaction was intended to defraud other creditors of the vendor.

2. **Seizure Under Tax Warrant:** OPPRESSION. The seizure, upon a tax warrant of $541, of merchandise of the value of from $1,400 to $1,800 or $2,000, or more, is oppressively excessive and void.

3. **Personal Taxes:** LIEN: RIGHT OF ACTION. The right of action for the enforcement of a lien for personal taxes is vested in the county treasurer, or, in counties under township organization, in the township tax collector alone.

4. **Action in Name of County.** A county in its corporate capacity has no duty to perform with respect to any of the matters mentioned in the preceding paragraph, except, through the county board, to authorize the bringing of an action by the treasurer or collector. It can not itself begin or prosecute such an action.

5. **Exclusive Statutory Remedy.** When the statute provides a remedy for the collection of taxes under given circumstances, that remedy is exclusive of all others.

ERROR from the district court for Johnson county. Tried below before FROST, J.  *Reversed.*

*Stephen B. Pound* and *M. B. C. True,* for plaintiff in error.

*Hugh La Master,* for defendant in error, Johnson county. *George A. Adams,* for the other defendants in error.

DUFFIE, C.

On the 13th day of July, 1896, Mrs. S. J. Scott, wife of C. B. Scott, was the owner of a stock of merchandise,

*Rehearing allowed.  See opinion, page 149, *post.*

variously valued at from $1,368.83, for which it was after-
wards sold at sheriff's sale, to between $2,250 and $2,500,
at which it was appraised by some of the witnesses. That,
as between herself and husband, it was her separate
estate, there is no substantial dispute in the evidence.
Whether it was so to be regarded as to third persons
is, in the aspect of the case first to be treated of, im-
material. On that day she and her husband executed and
delivered to the Tecumseh National Bank a mortgage to
secure her indebtedness to that institution in the sum
of $802.37. The bank immediately filed the instrument
for record and took possession thereunder. On the same
day, but after the completion of the foregoing transaction,
Mrs. Scott, being indebted to the Chamberlain Banking
Company upon her note for $1,019.17, upon which her
husband was also bound as maker, executed to Charles
M. Chamberlain, cashier of the latter-named institution,
a bill of sale of the goods, subject to the mortgage, in con-
sideration of which he promised to pay, and did pay, the
debt to his bank, and also promised to pay the note to
the Tecumseh National Bank, upon which her husband
was likewise bound as maker. There is no evidence that
there was any trust reserved in favor of either of the
Scotts, or that there was any intent to hinder or delay
or defraud the creditors of either of them. Undoubtedly,
the sole purpose of the parties was to provide for the pay-
ment of and to pay these two debts, which aggregated in
amount $1,821.54. Whether the goods were or were not
worth slightly more than this amount may be the subject
of some, though, we think, not very serious, debate. The
sum for which they were shortly afterwards sold by the
sheriff is to our minds the best evidence of their value,
and that sum, as already noted, was $450 less than the
above-mentioned aggregate. One question much debated
in the briefs and arguments is, whether the goods and
debts were those of Mrs. Scott, and her husband was surety
on the notes, or whether both were his, and she was surety.
But the inquiry does not appear to us to be material

in this connection.   In either case the indebtedness grew out of the business which one of the debtors was carrying on, and was contracted upon the faith and credit of the property in controversy.   On the 14th day of July the defendant Woolsey, as sheriff of the county, levied upon the goods, first, a distress warrant issued for the collection of personal taxes assessed against the husband, C. B. Scott; and second, and subject to the foregoing, a writ of attachment issued against both husband and wife.   Pursuant to these levies the property was by the sheriff taken from the possession of Chamberlain.   Afterwards writs of execution, some against one, and some against both of the Scotts, came into the hands of the officer, and were constructively levied, subject to the levies above mentioned.   No separate attempt was made to enforce the tax warrant, but on the 12th or 15th day of August, about one month after the seizure, the sheriff began an advertisement of sale under all the processes in his hands, and on the 15th of September made a sale pursuant to the advertisement for the sum of $1,368.83, as above stated. On the 20th day of July Chamberlain began an action against the sheriff and the sureties on his official bond, for a conversion of the goods, in which action the county of Johnson was permitted to intervene and file an answer, and in which was made the following order:  "Now on this second day of March, 1898, after the respective parties had adduced all their testimony and rested, and before the arguments, the county of Johnson and the other defendants filed separate motions moving the court to direct a verdict for the defendants.   Said motion being argued by the respective attorneys and before the court passed upon the same, but after he indicated his intention in regard to the case, plaintiff asks that a juror might be withdrawn and the plaintiff allowed to amend his petition, bringing in new parties, recognizing the lien for taxes and also the lien under the chattel mortgage of the Tecumseh National Bank and that the case be continued.   To all of which all of the defendants, other than Johnson county,

respectively object and except. Whereupon the court directs that a juror be withdrawn and plaintiff allowed to amend his petition as above indicated, within forty days, and the cause continued. To all of which the defendants, save Johnson county, except. It is further considered by the court that the costs, except what has heretofore been taxed since last term up to this time, be taxed against the plaintiff. To all of which the plaintiff excepts." Afterwards the plaintiff amended his petition, but without making the county a party thereto, and subsequently, with leave of court, dismissed the action without prejudice to a new action. In June, 1899, more than a year later, this action was begun by Chamberlain, also against the sheriff and his official sureties. The petition in this action, after reciting, in substance, the foregoing facts, except those concerning the former action, alleged that "in making such seizure said defendant, William H. Woolsey, pretended to be acting under and by virtue of the authority conferred by reason of a distress warrant said to have been issued by the treasurer of Johnson county, state of Nebraska, and directed to him as such sheriff; that the value of said goods and chattels amounted to the sum of $2,600 (that the said defendant Woolsey, in making such levy, willfully, maliciously and intentionally levied upon an amount of property far in excess of the amount required for the satisfaction of said distress warrant); that after the satisfaction of said distress warrant under said levy, there remained in the hands of him, the said defendant Woolsey, of said goods and chattels, property of the value of $2,075.90, which property he has not returned to this plaintiff, nor the value thereof, but has converted the same to his own use." The prayer is in the alternative,—for $2,600, if the levy of the distress warrant is held to be void, otherwise for $2,075.90, the difference between the amount of the warrant and the alleged value of the goods. The petition makes mention of no other process than the tax warrant. The answer justifies under the warrant, and also under the judicial writs

above mentioned; attacks the mortgage and bill of sale as being fraudulent as against both the county and the creditors of the Scotts; admits the seizure and sale; and alleges the application of the proceeds first to the satisfaction of the warrant, and afterwards towards the satisfaction of the writs. The reply amounts practically to a general denial of new matter. Johnson county was permitted to intervene, and filed an answer setting out annual levies for personal taxes against C. B. Scott, the husband, for varying amounts from the year 1886 to the year 1895, both inclusive. In other respects it does not differ materially from the answer of the defendants, except that it pleads the foregoing order granting leave to the plaintiff to amend as an adjudication upon the merits in its favor. The reply to this answer was, in substance, a denial, coupled with a plea of the statute of limitations as to the tax levies for the years 1886 to 1891, both inclusive. A jury was waived, and the action tried before the court, who found generally in favor of the defendants and rendered a judgment of dismissal, which it is sought by this proceeding to reverse.

We do not think that the order concerning the leave to amend, followed by an order of dismissal without prejudice, can be regarded as a judicial estoppel. That the latter order was made is alleged in the reply or answer to the answer and cross-petition of the county, and is not denied; but in the absence of this latter order, we should be of opinion that the former would not have precluded the plaintiff from contesting the amount or validity of the tax claim, or of the proceedings taken for its collection. With respect to creditors other than the county, it is immaterial whether the property in question belonged to the husband or wife. Whatever evidence tends to prove that it belonged to either, is of equal force to establish that the owner was the obligor of the debt which the mortgage and bill of sale were given to pay. There is no evidence that as to such creditors there was any fraudulent intent, unless it is to be inferred from the alleged disparity between the value of the property conveyed and the aggregate of the

16

debts; but the evidence convinces us, beyond a doubt, that there was no such disparity.

As respects the tax warrant and the proceedings thereunder, we are of opinion that they fall short of affording a justification to the sheriff for these reasons:

First. A levy upon from $1,400 to $1,800 or $2,000 worth, or more, of merchandise to satisfy a warrant calling for $541 and some cents was excessive. If the warrant was valid and the goods subject to seizure thereunder, the sheriff should have taken so many of them as were reasonably worth enough to pay the claim and costs of the proceeding. The taking of three or four times as many was oppressive and unjustifiable. Tax delinquents are not criminals, or to be punished as such, at the discretion of ministerial officers. On the contrary, it is elementary law that if a ministerial officer exceeds the command of his writ, he becomes a trespasser from the beginning. The rule is imperatively necessary to protect the persons and property of citizens from unreasonable searches and seizures.

Second. We think it has been established by this court that if the seizure had been lawful, the sheriff forfeited his protection by reason thereof, because of his inexcusable failure to obey the plain dictates of the statute. Section 90, article 1, chapter 77, of the Compiled Statutes provides: "When the treasurer distrains goods, and the owner shall refuse to give a good and sufficient bond for the delivery of said goods, on the day of sale, he may keep them at the expense of the owner, and shall give notice of the time and place of their sale within five days after the taking in the manner constables are required to give notice of the sale of personal property under execution; and the time of sale shall not be more than twenty days from the day of taking, but he may adjourn the sale from time to time, not exceeding five days in all, and shall adjourn at least once when there are no bidders; and in case of adjournment, he shall put up a notice thereof at the place of sale. Any surplus remaining above the taxes, charges of keeping and fees for sale, shall be returned to the owner,

and the treasurer shall, on demand, render an account in writing of the sale and charges." This plain and mandatory provision of the statute, the sheriff wholly failed to comply with. His failure to give the notice and to make the sale of the property seized under the distress warrant within the time prescribed by statute rendered his proceedings thereunder illegal and void *ab initio,* and he became a trespasser, and liable for a conversion of the property. *Pierce v. Benjamin,* 14 Pick. [Mass.], 356, 25 Am. Dec., 396; *Noyes v. Inhabitants of Haverhill,* 11 Cush. [Mass.], 338; *Brackett v. Vining,* 49 Me., 356; *Clements v. Eiseley,* 63 Nebr., 651. In *Clements v. Eiseley,* the court says (page 656) : "Neither is there any contention but that the taking by the defendant as sheriff was in the first instance lawful, and done in good faith, in pursuance of a valid distress or tax warrant. He became a wrong-doer by the method adopted after the levy by virtue of the writ he then held, for which he became liable as a trespasser." The levy on the property was made July 14, 1896, the first publication of notice of sale was August 12 or August 15, and the sale began September 5, 1896. Had the sheriff made a separate levy under the distress warrant, on sufficient property to satisfy it, he could easily have complied with the provisions of the statute above quoted. This was the only legal method he could have pursued. Instead of doing this he levied both writs on the whole property, and then seems to have intentionally postponed the sale of it in order that other writs might come into his hands, whereby the whole of the property would be absorbed. The judgments on which the executions were issued under which he subsequently made constructive levies on the property were all recovered after the seizure of the property. The legal effect of the proceeding was that the sheriff sold the property, not under the distress warrant, but under the order of sale of the attached property. If there ever had been any legality or validity in the levy under the distress warrant, it had lost all its force and virtue, and become wholly void by the failure of the sheriff to give the notice

and make the sale in the manner and within the time prescribed by the statute in such cases.

Having arrived at the conclusion that the sale to Chamberlain was not fraudulent as to Scott's creditors, and that the sheriff can not justify under the distress warrant, the only question remaining for determination is the right of the county of Johnson to intervene in the action and in this manner assert a right to a portion of the fund derived from the sheriff's sale in satisfaction of taxes assessed against the property.

Section 89, chapter 77, article 1, of the Compiled Statutes, 1901, points out the methods of collecting taxes in this state, and these methods are exclusive. It has been determined by the former decisions of this court that taxes are not debts, in the ordinary acceptation of that term, and that an action at law will not lie for their recovery where the legislature has prescribed another remedy. It has also been determined that where the legislature has prescribed a remedy by action, the action must be brought and maintained in the manner defined. *Richards v. Clay County,* 40 Nebr., 45. The statute, so far as it provides for the collection of taxes by action in the county where assessed, is as follows: "*Provided,* That in case no personal property of delinquent can be found, it shall be the duty of the treasurer, * * * when directed so to do by order of the board of county commissioners or the board of supervisors, to commence suit by civil action in the district court of said county in the same manner as other civil actions are commenced, and prosecute the same to judgment and collection by attachment, execution, or garnishment, as the case may require," etc. This undoubtedly contemplates that the action shall be brought in the name of the treasurer, the custodian of the tax when collected; and this was the procedure which obtained in *Reynolds v. Fisher,* 43 Nebr., 172. Where the delinquent has removed from the county, the statute provides that the treasurer shall forward a statement of the delinquent tax to the treasurer of the county of his residence, and in such case, if suit is brought by the latter, it

must be in the name of the commissioners or supervisors of the county in which the tax was assessed; but this is the only case in which a civil action for taxes can be maintained in the name of the county authorities other than the treasurer. Had the treasurer intervened in this action in his official capacity, we see no reason why he should not have been awarded whatever amount was due for taxes assessed against the goods while owned by the Scotts; but, because of want of authority to maintain such an action, the answer in intervention, as it is called, but more properly speaking, the petition of intervention, filed by the county, should have been dismissed.

It is recommended that the judgment of the district court be reversed, that the claims made by Johnson county be dismissed, and a new trial granted.

AMES and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed, the claims made by Johnson county dismissed, and a new trial granted.

REVERSED.

The following opinion on rehearing was filed May 20, 1903. *Judgment of reversal adhered to:*

Commissioner's opinion, Department No. 2.

1. **Wrongful Conversion of Personal Property:** ACTION. One having the legal title and the right of possession to personal property, may maintain an action for its wrongful conversion by a stranger without joining a party who may have a beneficial interest therein.

2. **Record:** RIGHTS OF INTERVENER. Record examined, and *held* that it does not disclose a former adjudication of the rights of the intervener.

3. **Stare Decisis.** Former judgment in this case, *ante*, page 141, adhered to.

BARNES,. C.

This case is before us on a rehearing. The former opinion, delivered by Commissioner DUFFIE, of the Third De-

partment, will be found on page 141, *ante,* and contains a statement in which the facts are so fully and accurately set forth that nothing further in that respect is needed.

The defendant county in its brief contends that in the former opinion three propositions were not fully considered: First, that the plaintiff is not the real party in interest; second, that it could properly maintain the defense; and, third, that there has been a former adjudication of the matter, so far as its claims are concerned.

1. On the first point it is insisted that the Chamberlain Banking Company is the real party in interest; that notwithstanding the plaintiff Chamberlain purchased the property alleged to have been wrongfuly converted by the defendant Woolsey, and was in possession of it at the time it was taken by the sheriff under the distress warrant, yet his purchase was in fact made to secure the bank, of which he was the cashier, against possible loss; that the bank, and not Chamberlain, is the only party who can maintain this action. This contention is based on the provision contained in section 29 of our Code of Civil Procedure, which is as follows: "Every action must be prosecuted in the name of the real party in interest, except as otherwise provided in section thirty-two." This contention can not be sustained. Chamberlain testified that he made the purchase on his own account; that he paid the amount due the bank and assumed and agreed to pay the note and mortgage due to the Tecumseh National Bank, so it may be said that he was the real party in interest. If it be conceded that the purchase was made for the sole purpose of securing his bank from probable loss, still the legal title to the property was taken by him; the contract was made with him for the benefit of the bank, and this gave him the right to maintain the action in his own name without joining the bank as a party plaintiff, under section 32 of the Code, which provides that "an executor, administrator, guardian, trustee of an express trust, a person with whom or in whose name a contract is made for the benefit of another, or a person expressly authorized by statute, may

bring an action without joining with him the person for whose benefit it is prosecuted."* This section was construed in the case of *Ley v. Miller*, 28 Nebr., 822, 825, and in *Alexander v. Overton*, 36 Nebr., 503, where it was stated, in the body of the opinion, by Justice MAXWELL, that the person holding the legal title to real estate, although it in fact belonged to another, could maintain an action in ejectment in her own name to recover the possession, and that in law, holding the legal title, she would be the real party in interest. In the case at bar, the legal title to the goods in question was in the plaintiff Chamberlain; they were in his possession at the time they were seized by the sheriff, and the record discloses that he was entitled to such possession. Therefore he was the proper and necessary party plaintiff, and the action was properly prosecuted in his name. In *Daniels v. Ball*, 11 Wend. [N. Y.], 57 (note), it is stated that trover will lie against a stranger, on a bare possession. A defendant can not set up property in a third person without showing some claim, title or interest in himself derived from such third person. *Duncan v. Spear*, 11 Wend. [N. Y.], 54; *Knapp v. Winchester*, 11 Vt., 351. Possession is sufficient to authorize one to bring trover against a tort-feasor, until he shows a better title. *Duncan v. Spear, supra; Fairbank v. Phelps*, 22 Pick. [Mass.], 535; 4 Am. & Eng. Ency. Law, 117. An action for trover or conversion may be brought by the special or general owner, and judgment by one is a bar to an action by the other. *Smith v. James*, 7 Cow. [N. Y.], *328. We therefore hold that the plaintiff was the proper party to prosecute this action.

2. It is strenuously urged that the county should have been allowed to defend this action under section 50*a* of the Code, which provides that "any person who has or claims an interest in the matter in litigation, in the success of either of the parties to an action, or against both, in any action pending or to be brought in any of the courts of the state of Nebraska, may become a party to an action be-

* Cobbey, Annotated Code, pp. 23, 24.

tween any other persons or corporations, either by joining the plaintiff in claiming what is sought by the petition, or by uniting with the defendants in resisting the claim of the plaintiff, or by demanding anything adversely to both the plaintiff and defendant, either before or after issue has joined in the action, and before the trial commences." It can not be claimed that the county has any interest in the property converted, because it appears that a portion of the money derived from its sale has been paid over to the county treasurer in satisfaction of the taxes in which the county claims it had an interest. It has received its money, and this money in the hands of its treasurer has taken the place of whatever lien it may have had on the property. But it is stated that the county had agreed to hold the sheriff harmless in the matter of the execution of the distress warrant on which the property was sold. Such an agreement, if the county could make it at all, would amount to no more than a contingent liability, and a mere contingent liability to answer over to the defendant Woolsey without a privity with the plaintiff is not sufficient ground for intervention. *Omaha S. R. Co. v. Beeson,* 36 Nebr., 361. Again, an intervener must plead some interest in the subject-matter of the litigation; a mere denial of the plaintiff's right is insufficient to give him a standing in court. The above remarks are to be considered in addition to the statements contained in the former opinion, wherein the learned commissioner discusses the right of the county to interevene, and holds that it had no such right.

3. It is further contended that the statement "that the lien for taxes would be recognized," which it is claimed was made when the court permitted the plaintiff to withdraw a juror and amend his petition, amounted to an adjudication of the county's right. It was of no interest to the county whether the lien for the taxes described in the distress warrant should be recognized as valid or not. It was dismissed from the action, and made no further appearance therein. The recognition of the claim could affect no one but the defendant Woolsey. If it be held that the

taxes mentioned in the distress warrant are a valid first lien on the property, and that matter be properly presented, the sheriff might be entitled to deduct the amount of such lien from the value of the goods by way of mitigation of damages. This matter, however, is not determined here, because the judgment must be reversed and a new trial ordered, and that question can be considered and determined upon such trial. The statement, as an agreement, possesses none of the elements of a final adjudication, and the contention on this point must fail.

4. The other defendants in error make but one point in their brief and argument, which is, that we erred in our former opinion in holding that the sale of the goods was not fraudulent and void as to creditors. A careful examination of the record convinces us that our former judgment on this question is right. It appears that at the time of the sale of the goods in question, C. B. and S. J. Scott had executed a chattel mortgage thereon to the Tecumseh National Bank to secure the payment of an indebtedness of S. J. Scott (the owner of the goods) to that institution, amounting to $802.37, and had turned over the possession of the goods to the bank under the chattel mortgage; that thereupon the plaintiff purchased the stock, took a bill of sale therefor from the Scotts, assumed the payment of the note and mortgage to the Tecumseh National Bank, paid the Chamberlain Banking Company the note of S. J. Scott, amounting to $1,019.17, and took the goods into his possession. There is no evidence to impeach the good faith of this transaction on the part of the plaintiff. But it is contended that the value of the goods was so much in excess of the amount paid therefor that the transaction amounts to a constructive fraud. This contention can not be maintained. The goods were sold by the sheriff for $1,368.83, and it is fair to presume that they were sold for all they were worth. Waiving this presumption, the testimony discloses that the value of the goods can be fixed at any point between the sum for which they sold and $2,500. It appears that the amount actually paid for the stock was

$1,821.54, and we may assume that its value did not exceed that amount. It appears beyond question that nothing was paid to either of the Scotts by the plaintiff in excess of the debts owed by them to the two banks. If the goods were worth more than that sum there can be no doubt but that Mrs. Scott would have exacted payment of the excess from the purchaser. She was satisfied to take the payment of her obligations to the banks in full satisfaction of the purchase price. The plaintiff therefore gave her nothing which she could place beyond the reach of other creditors. She, as a debtor, had a right to pay the debts she owed to the two banks to the exclusion of her other creditors. This question was so thoroughly disposed of by the learned commissioner in the former opinion that no further discussion of it is required.

We are satisfied, beyond doubt, that the former opinion was right, and we recommend that it be adhered to.

ALBERT and GLANVILLE, CC., concur.

By the Court: For the reasons above stated, the former opinion in this case is adhered to.

FORMER OPINION ADHERED TO.