WILLIAM T. DARNELL, APPELLEE, V. CITY OF BROKEN BOW ET AL., APPELLANTS.

299 N. W. 274

FILED JULY 3, 1941. No. 30983.

*Perry, Van Pelt & Marti,* for appellants.

*Evans & Lee, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, CARTER, MESSMORE and YEAGER, JJ., and MEYER, District Judge.

EBERLY, J.

This is a suit in equity by William T. Darnell, as a resident, inhabitant, and taxpayer of the city of Broken Bow, Nebraska, against Allan F. Black, an attorney at law, the city of Broken Bow, and certain public officers, to cancel two tax collection contracts entered into by Black and the city authorities for the collection and enforcement of cer-

tain tax sale certificates covering real estate situated within that municipality as unauthorized, void and *ultra vires*, and for an accounting by Black of the moneys received by him pursuant thereto. From adverse findings and judgment of the district court, Black and the city of Broken Bow appeal, and for the same reason a cross-appeal is presented by plaintiff.

The facts leading up to and involved in this litigation may be stated as follows: The defendant city is a municipal corporation of more than 1,000 and less than 5,000 population. Allan F. Black is an attorney at law admitted to practice in the state of Nebraska. On September 9, 1930, he was appointed city attorney of Broken Bow (for a term ending April 28, 1931), his salary fixed at the rate of $200 per annum, he had accepted the appointment, and served as such until on April 21, 1931, he submitted his resignation to the mayor and council of that city at a special meeting, which was immediately accepted.

The applicable statutes relating to the situation here presented include the following:

Section 17-107, Comp. St. 1929, provides in part: " * * * the mayor, with the consent of the council, may appoint * * * a city attorney * * * who shall hold their offices for one year unless sooner removed by the mayor with the advice and consent of the council."

Section 17-108, Comp. St. 1929, provides: "The salaries of all officers of the city shall be fixed by ordinance, not exceeding the following amounts respectively: * * * city attorney, four hundred and fifty dollars per year."

Section 17-516, Comp. St. 1929, provides: "The city or village attorney shall be the legal adviser of the council or board of trustees. He shall commence, prosecute and defend all suits and actions necessary to be commenced, prosecuted or defended on behalf of the corporations, or that may be ordered by the council or board of trustees; and when requested, shall attend meetings of the council or board and give them his opinion upon any matters submitted to him, either orally or in writing, as may be required."

Section 17-517, Comp. St. 1929, provides: "No officer of any city or village shall be interested, directly or indirectly, in any contract to which the corporation, or any one for its benefit, is a party; and any such interest in any such contract shall avoid the obligation thereof on the part of such corporation, nor shall any officer receive any pay or perquisites from the city other than his salary, as fixed by ordinance and this chapter; and neither the city council nor board of trustees shall pay or appropriate any money or other valuable thing to any person not an officer for the performance of any act, service or duty, the doing or performance of which shall come within the proper scope of the duties of any officer of such corporation."

Section 17-518, Comp. St. 1929, provides: "The emoluments of no officer whose election or appointment is required by this chapter shall be increased or diminished during the term for which he shall have been elected or appointed; and no person who shall have resigned or vacated any office shall be eligible to the same during the time for which he was elected or appointed, when during the same time emoluments had been increased."

The municipal code as adopted by the city of Broken Bow contained the following provisions:

Section 6. "There shall be appointed by the mayor at the beginning of each municipal year, on the last Tuesday in April, as aforesaid, appointive officers as follows: * * * city attorney; * * *."

Section 20. *"City Attorney; Appointment; Duties; Special Counsel.*—Whenever, in the judgment of the mayor and council of this city it shall be deemed necessary or expedient, the mayor shall forthwith appoint a city attorney with the advice and consent of the council. The city attorney shall be the general legal advisor of the mayor and council. He shall commence, prosecute and defend all suits and actions necessary to be commenced, prosecuted or defended on behalf of the city or that may be ordered by the mayor and council, and, when requested, he shall attend upon the sittings and meetings of the aforesaid body and, either

orally or in writing, deliver to it, upon request, his opinion upon any inquiry of a legal nature which may be required of him in the regular course of said body's official business. In their discretion, the aforesaid body may employ an attorney or attorneys, both for substituted and supplemental services, or for special pieces of legal work, and pay for the same out of the general fund of this city for incidental purposes."

On April 21, 1931, the next official action taken after the acceptance of the resignation of Allan F. Black was the immediate adoption of a resolution by the mayor and council "that the city of Broken Bow, Nebraska, purchase tax sale certificates numbered 1 to 110 inclusive and enter into a contract with Allan F. Black to commence and prosecute such proceedings as in his judgment are necessary in order to enforce the collection of said taxes, a list of which is attached hereto and made a part hereof, marked exhibit A, and that the said Allan F. Black be paid for his services in enforcing said collection the following amounts:

"1. In all cases where a foreclosure is commenced and prosecuted to final judgment, the attorney's fee of 10 per cent. which is taxed by the court as part of the costs in the case shall be paid to the said Allan F. Black as compensation for his services in said cases so prosecuted to final judgment.

"2. In all cases where redemption is effected or payment of the taxes is made after the passing and approval of. this resolution and before a decree has been entered and before an attorney's fee has been taxed by the court the said Allan F. Black shall receive as his compensation 10 per cent. of the amount so paid by tax debtor."

Notwithstanding his resignation on April 21, 1931, Black received his usual official stipend covering the entire month of April at the rate of $200 per year, which, under the terms of his original appointment as city attorney, he was entitled to receive while serving as such.

On April 26, 1932, at the annual meeting of the mayor and council of the city of Broken Bow, which occurred after the city election of that year and which is devoted in part to the

filling of the municipal offices, the following business was transacted: "The mayor then announced the following appointments: (among others) city legal advisor, Allan F. Black."

The reappointment of Allan F. Black as city legal advisor was announced to the city council at the annual meeting held April 25, 1933.

On April 28, 1936, at a regular meeting of the mayor and council of Broken Bow, the minutes disclose: "The mayor then recommended Allan F. Black as legal advisor for the city of Broken Bow. It was moved by Smith and seconded by Chrisman that the appointment of Allan F. Black as the city's legal advisor be approved. Motion carried."

It also appears that the name of Allan F. Black had been carried as an officer of the city of Broken Bow continuously since April 21, 1931. At first it appeared as "City Attorney," later merely as "Attorney."

The minutes of the regular meeting of the mayor and council of the city of Broken Bow held on April 11, 1933, disclosed that a motion was duly adopted for the appointment of a committee to cooperate with the city's legal advisor in regard to special tax sales, and a resolution was also duly adopted which, in part, was as follows: "That it be, and it hereby is, recognized that since the 21st day of April, 1931, the said Allan F. Black has at all times been and now is special counsel for the city of Broken Bow, Nebraska, and has not been since April 21st, 1931, an officer of the city of Broken Bow, Nebraska, in the capacity of city attorney, and that any and all sums of money paid to the said Allan F. Black by the city of Broken Bow, Nebraska, since April 21, 1931, have been fees paid to a private practicing attorney and not in any sense a salary as city attorney." This resolution thus adopted ratified and approved the contract then existing between Allan F. Black and the city of Broken Bow in connection with the collection and foreclosure of city tax certificates numbered 1 to 110, inclusive.

The official minutes of the regular meeting of the mayor and council of the city of Broken Bow held on April 15, 1936, includes the adoption of a resolution of which the following constitutes a part: "Now therefore be it resolved that the city of Broken Bow, Nebraska, purchase tax sale certificates upon real estate described in the attached list and employ attorney Allan F. Black to proceed with the collection of the same on the terms and conditions of the contract herewith submitted which the mayor and clerk of the said city are hereby authorized to make."

The tax sale certificates referred to in this resolution were all issued subsequently to those referred to in the resolution of April 21, 1931, and the compensation agreed to be paid Black by the city of Broken Bow under the contract of 1936 was: "In all cases where foreclosure is commenced and prosecuted to final judgment, the attorney's fee of ten per cent. which is taxed by the court as part of the costs in the case shall be paid to party of the second part, but only where, and to the extent that the same is available as part of the costs out of the proceeds of the sale of the real estate involved." Together with the further agreement: "In all cases where redemption is effected or payment of the taxes is made after the execution of this contract, and before a decree of foreclosure has been entered, the party of the first part shall pay to party of the second part (Black) as his compensation five per cent. of the amount so paid by the tax debtor."

The compensation for Black set forth in the contract of 1931 was: "The attorney's fee of 10 per cent. which is taxed by the court as part of the costs," and where redemption is made or taxes paid by the owner of the land before decree of foreclosure is entered, "Allan F. Black shall receive as his compensation 10 per cent. of the amount so paid by the tax debtor."

From the date of his first appointment, September 9, 1930, as city attorney of Broken Bow at a salary fixed at $200 per annum to the commencement of this action on September 30, 1939, there was paid to Allan F. Black from

the general fund of the city, for legal services, the sum of $1,783.30. These payments, except the first one, it appears, were at all times regularly made quarterly on the time basis of $200 a year. The bills therefor were rendered by Black and allowed by the mayor and council on the time basis and not on the basis of the reasonable value of each item of service performed by the claimant. Thus, we have a bill for $50 for a quarter where the services specified were "attending six council meetings." Another bill was allowed wherein the services are specified: "Attended six council meetings. Case of State of Nebraska vs. Fisher. In regard to the Telephone Co. contract. $50." And a third claim for services recited: "From April 25th to July 25th, 1933. Drafting and revising the Occupation Tax Ordinance. Preparation and drafting of Beer ordinance. Vagrancy case—City of Broken Bow v. Jenkins. In re claim of Janee Crawford. Attendance at six council meetings. Total, $50."

Under these tax collection contracts, Mr. Black, as attorney, filed a total of 14 cases in the district court for Custer county, which contained a total of 117 causes of action on tax sale certificates. The court entered 106 foreclosure decrees, aggregating $181,018.32. Eleven causes of action were still pending at the time of the institution of this instant suit. One hundred six tracts of land have been sold at public sale and sales confirmed. On these the sheriff has received and accounted for, as sale price, the sum of $23,749.66. Actual court costs in these cases other than attorney fees taxed aggregated $2,556.08, and $12,566.75 was the net amount received by the county treasurer for disposition as provided by law. Mr. Black has been paid or is to be paid $8,626.83 for his services in bringing these actions. The results of the foreclosure proceedings show a deficiency after judicial sale and confirmation of the 106 tracts of land thus sold amounting to $167,451.57. In no cause of action did the property sell at judicial sale for a sum of money sufficient to equal the tax decree and interest accrued thereon, exclusive of costs and attorney's fees taxed therein.

It also appears that, after the making of the contracts above referred to and prior to the commencement of the foreclosure proceedings and the entry of decrees of foreclosure, tax debtors appeared at the office of the county treasurer, and redeemed their lands from such tax sales; and that the county treasurer thereupon received and accepted such payments, wrote regular tax receipts and canceled the tax sales involved. The total of such payments aggregated the sum of $32,782.10, for which, under the terms of the contracts hereinbefore referred to, Black claimed and received compensation in the sum of $2,020, paid by the city of Broken Bow. All this commission was paid during the "two years waiting period," and before actions to foreclose had been instituted.

The trial court, after consideration of all the evidence received, adjudged the contracts of April 21, 1931, and April 17, 1936, null, void and illegal, and duly canceled the same, enjoined all further performance thereunder, and adjudged that the defendant Black account for and pay into the court the sum of $5,201.83.

In support of their appeal, appellants take issue with the findings and judgment of the trial court. It is their contention that Allan F. Black was, by virtue of his appointment, a public officer, that his resignation took effect immediately, and that acceptance thereafter by the mayor and council was unnecessary. Authorities are cited in support thereof. However, statutory provisions appear to have rendered unnecessary any consideration of this contention. Section 32-1701, Comp. St. 1929, provides: "Every civil office shall be vacant upon the happening of either of the following events at any time before the expiration of the term of such office, as follows: First. The resignation of the incumbent; * * *." Section 32-1702, Comp. St. 1929, provides: "Resignations of civil officers may be made as follows: * * * Sixth. By all officers holding appointments, to the office or body by whom they were appointed. Such resignation shall not take effect until accepted by board or officer to whom the same is made." Section 32-1703, Comp.

St. 1929, provides: "Vacancies shall be filled in the following manner: * * * in city and village offices, by the mayor and council * * *."

The record discloses, however, that Black's resignation had been accepted evidently in strict compliance with the statutory provisions quoted.

In this equitable proceeding the controlling maxims are: "Equity looks through forms to substance," or as stated in similar language, "A court of equity goes to the root of a matter and is not deterred by forms." These maxims will be applied, "looking, as equity always does, to substance and not shadows, to the thing done not the misnomer of that thing." 21 C. J. 204, note 65.

The use by the mayor and council of the terms "Special Counsel" for the city of Broken Bow, and "City Legal Advisor," etc., being ambiguous, may be properly interpreted by reference to the circumstances of the parties at the commencement of and during the continuance of the transactions in which such terms were employed, the terms of the obligations contractual then entered into by them, and the acts of the parties during the continuance of such obligations, and subsequently. *Drake & Jackson v. Corporation of Victoria,* 1 B. C. Rep. (Part 2) 165.

Proceeding from the accepted basis of the investigation above set forth, it is evident from the record and attendant circumstances which may be gleaned therefrom that the subject-matter of the first tax collection contract had been fully investigated and reported to the mayor and council or their representatives prior to April 21, 1931. The object it was desired to accomplish with reference to the same had been agreed upon, and prior to the submission of the resignation to the city council, the terms of the proposed tax collection contract had been substantially settled between the parties, and the method of the future discharge of the duties imposed by statute on the city attorney's office fully understood, as well as the necessity of Black's formal resignation realized. Indeed, we find that these matters were, prior to April 21, 1931, submitted to an eminent member

of the Nebraska Bar who was not in attendance at the meeting of the mayor and council on that date, and that an approved form of a typewritten tax collection agreement had been prepared by him before April 21, 1931, which prior to the resignation, had been accepted and approved by Black, and immediately after the acceptance of the latter's resignation, it had been formally adopted and made of record by the mayor and city council.

The proper interpretation of this transaction and the several constituent parts thereof, in view of existing ambiguity and incompleteness, invokes the application of the rule that it is proper, and courts will generally follow the interpretation adopted by the parties themselves. *Gorder & Son v. Pankonin,* 83 Neb. 204, 119 N. W. 449.

In some cases courts will look to the subsequent acts of the parties; and where both parties to a transaction, with full knowledge thereof, by their action under it have given it the same construction, it is a safe rule to adopt that construction. *School District v. Estes,* 13 Neb. 52, 13 N. W. 16.

Thus, the subsequent acts of the corporate authorities and defendant Black have evidenced the complete agreements and understanding entered into on the 21st day of April, 1931, at a time when the term of office in which Black was serving had not yet expired. It is thus fairly established that at this time these mutual obligations included the immediate formal resignation by defendant Black of his office as city attorney, but that the duties imposed by law upon the office of city attorney he would continue to perform under an unchanged remuneration at the rate of $200 a year and under the designation of "Special Counsel," though he was otherwise held out as city attorney, city legal advisor, etc.; and that commencing on the 21st day of April, 1931, he should also receive the additional compensation provided in the tax collection contract. Notwithstanding the formal acceptance of his resignation as city attorney, in view of all the facts, Black remained city attorney *de facto,* and thereafter performed continuous service as such, and received the compensation previously

prevailing. The situation clearly brings the matter within the letter and reason of section 17-518, Comp. St. 1929, and the first tax collection contract, in clear effect intending to and operating to unlawfully increase the emoluments of Black's office during the term for which he was appointed, is invalidated by that fact, even though he be considered to be, in effect, appointed to succeed himself.

The validity of this first tax collection contract, as well as the one entered into on April 17, 1936, is challenged on the additional ground that, as applied to the public revenue, both, being contracts for contingent fees or compensation, are invalid as to form, unreasonable as to amounts specified, and contrary to a sound public policy. In support of this, the case of *Platte County v. Gerrard,* 12 Neb. 244, 11 N. W. 298, is cited. That case involved a contract wherein Gerrard and Whitmoyer, as attorneys, agreed to perform such acts as might be necessary in having certain lands, previously unlawfully omitted, properly placed upon the public tax rolls and subjected to public taxation. In consideration whereof, the board of county commissioners agreed to pay such attorneys for such services, 25 per cent. of the amount of such taxes for the year 1873, payable only in the event of those taxes being collected according to law. This court determined that the contract in question, because of its contingent character, was one which the board had no legal power to make, and that it could not be upheld by the courts. In the opinion in that case Cobb, J., speaking for the court, says, in part:

"But let us suppose this not to have been the case, that the board of county commissioners might at their discretion employ counsel of their choice, to advise them as to their duties, and pay therefor either an agreed price, or a *quantum meruit* out of the public funds; does it follow that such board might, as a mode of compensation for such advice, lawfully bargain away an aliquot part of such of the public revenues as might be affected thereby? And making such compensation contingent upon the success of the measures taken under such advice? We think not. The giving of

contingent fees, or compensation for services rendered to the public, is contrary to sound policy.

"It is the spirit of our laws to collect from the people only such amount of money by taxation as may be sufficient to a certain and economical support of the government in all its branches, and to require the strictest accountability therefor. The law has provided for all officers and public servants, having to do with the levy and collection of taxes, a fixed salary, depending in no degree upon the amount of taxes actually collected, and while in some of the Latin nations of Europe there was formerly, and may yet be, a system of farming out the collection of the public revenues, we do not think that such a thing was ever known, or would be tolerated, in any country inhabited by an English speaking people."

This would sustain the conclusion that the tax sale contracts here under consideration, so far as expressly providing for the contingent payment of an aliquot part of the taxes actually collected or the equivalent thereof, would be clearly within the scope of the inhibition announced above by Cobb, J., and wholly void.

Further, this conclusion apparently finds support in the inherent nature of the entire transaction. The proceedings here under consideration grow out of the purchase by the corporate authorities of Broken Bow, pursuant to section 77-2010, Comp. St. 1929, for the use and benefit of that city at a county treasurer's tax sale, of certain certificates of tax sale, which were duly delivered to them. By reason of the ownership of such tax sale certificates, the municipality was thereafter deemed to be the assignee and owner of all liens for taxes embraced therein, theretofore possessed by the state, county, city, school district, or other municipality which originally levied the same and for which said tracts of land assessed were sold. Comp. St. 1929, sec. 77-2040.

At the time of this purchase the city paid no money thereon, and in fact no money was due or payable thereon, "until, by redemption or foreclosure proceedings, he (the pur-

chaser) shall have received the money thereon." Comp. St. 1929, sec. 77-2011.

This court has repeatedly announced the doctrine that, "A city, purchasing and foreclosing a tax sale certificate on real estate, does so as trustee of an express trust for the use and benefit of the state and all other governmental subdivisions entitled to participate in the distribution of the proceeds. Comp. St. 1929, secs. 77-2009 to 77-2011; *County of Lancaster v. Trimble*, 34 Neb. 752, 52 N. W. 711; *Logan County v. Carnahan*, 66 Neb. 685, 693, 92 N. W. 984, 95 N. W. 812; *City of Plattsmouth v. Hazzard*, 132 Neb. 284, 271 N. W. 801." *City of McCook v. Johnson*, 135 Neb. 270, 281 N. W. 69.

Notwithstanding the creation of this special statutory trust by the city's purchase of the tax sale certificates, the inherent nature of the taxes included therein remained unchanged. The statutory trustee was empowered to enforce the liens thereof in the manner provided by law, but the beneficial ownership as *cestuis que trustent* of the taxes themselves remained in the public corporations by which they had been levied. This necessarily involved the assurance of the integrity of the separate tax funds and restricting the application of what was realized therefrom to the purpose for which originally levied.

In 4 Cooley, Taxation (4th ed.) 3572, sec. 1819, the principle is thus stated: "Municipal taxes levied for one purpose ordinarily cannot be applied by the municipality to another purpose. So a township fund raised by taxation for special and specific purposes cannot be diverted to other purposes, and taxes levied for school purposes cannot be used for county purposes nor can taxes levied for county purposes be used for school purposes."

Likewise, taxes may not be diverted from state to county nor from county to any other municipality, and neither may taxes levied for a definite purpose by either of these public corporations be diverted from this purpose for which assessed at the mere option of the corporate authorities levying the same.

Our revenue system is based on the principle thus announced. As an example we have the following pertaining to county funds: "Whenever a tax is levied for the payment of a specific debt, the amount of such tax collected shall be kept as a separate fund in the county treasury, and expended only in the liquidation of such indebtedness: *Provided*, any surplus remaining in the treasury after full payment of such indebtedness shall be transferred to the general fund of the county." Comp. St. 1929, sec. 26-123.

It follows that the beneficial owners of the taxes enforced by the statutory trustee are entitled to a strict accounting of the avails of the tax foreclosures prosecuted by it on the basis of the integrity of the separate tax funds involved. This is wholly incompatible with the claim of the trustee in the instant case to compensate its attorney by an aliquot part of the avails of a recovery as a contingent fee under the circumstances disclosed by the record before us.

Of course, it is obvious that where the proceeds of a sale are sufficient to fully satisfy all taxes embraced in the foreclosure, together with costs taxable in the action, including attorney's fees, the matter of unlawful diversion of funds would not be involved. But in the instant case the proceeds realized from the tax foreclosure sales amounted to but $23,749.66, and after due application of this amount to the decrees entered there remained a deficiency of $167,451.57. It is obvious that after the deduction of the $2,556.08 court costs taxed therein, and the further deduction of $8,626.83 as the attorney's contingent fees under his contracts with the city of Broken Bow, leaving but $12,566.75 for distribution to the state and all municipalities involved in the proceedings, such deductions would inescapably operate as an unlawful diversion and use of tax levies in a manner not contemplated by the revenue laws of this state.

This conclusion is even more strikingly apparent when we examine the results of the actual enforcement of these contingent attorney fee contracts in six of these tax foreclosure cases which are embraced in the totals hereafter

set forth. The first column contains the case number, the second column the amount of money actually received by Attorney Black pursuant to these contracts, and the third column the actual amount of money realized by the public corporations whose taxes were being foreclosed:

| | | |
|-------|-----------|---------|
| 11195 | $1,514.76 | $538.81 |
| 11284 | 732.66 | 283.35 |
| 11354 | 274.20 | 86.45 |
| 11385 | 62.67 | nothing |
| 11761 | 146.15 | 8.98* |
| 11807 | 55.23 | 6.50* |

(*These sums are still in the hands of the clerk of the district court.)

An added reason for adhering to the principles announced in *Platte County v. Gerrard,* 12 Neb. 244, 11 N. W. 298, is to be found in the fact that neither expressly nor by necessary implication do our revenue laws direct or authorize the employment by public corporations of the collection device of contingent fees or compensation for services employed in the collection of public revenue, notwithstanding that decision has, in effect, for sixty years denied the employment of that method, and no legislative act has been had on this subject which in any manner militates against its full force and effect.

The controlling principle appears to be: "The necessary revenue of the state and its governmental subdivisions shall be raised by taxation in such manner as the Legislature may direct." Const. art. VIII, sec. 1.

"The legislature had exclusive and discretionary power to prescribe the means by which taxes shall be collected. * * * Taxes are collectible in, and only in, the manner provided by statute, the matter being wholly statutory." 61 C. J. 1010.

"Courts cannot extend the operation of such statutes (public revenue), or allow compensatory fees in such case, without direct statutory authority." *Kane v. Union P. R.,* 5 Neb. 105.

"An officer cannot charge fees not authorized by statute for services performed (in the enforcement of public rev-

enue laws), and any service rendered for which no statute authorizes a fee must be performed gratuitously." *Red Willow County v. Smith,* 67 Neb. 213, 93 N. W. 151.

"When the statute provides a remedy for the collection of taxes under given circumstances, that remedy is exclusive of all others." *Chamberlain v. Woolsey,* 66 Neb. 141, 92 N. W. 181. See, also, *Richards v. County Commissioners, Clay County,* 40 Neb. 45, 58 N. W. 594.

Without a recapitulation of reasons already stated, they support the conclusion that the tax collection contracts here in suit are each unauthorized by law, contrary to public policy, and void. But the foreclosure of tax sale certificates by a civil action was clearly within the statutory powers of the municipality. The lawful employment of an attorney's services for that purpose was therefore within the corporate functions thereof. *Meeske v. Baumann,* 122 Neb. 786, 241 N. W. 550; *City of Scottsbluff v. Southern Surety Co.,* 124 Neb. 260, 246 N. W. 346.

In such a case, even though the contract of employment of the attorney, because of provisions therein contained, be void so that no recovery at law may be had thereon, still such attorney, in a proper action, is entitled to be paid on a *quantum meruit* basis for lawful services rendered by him. *Grand Island Gas Co. v. West,* 28 Neb. 852, 45 N. W. 242; *Call Publishing Co. v. Lincoln,* 29 Neb. 149, 45 N. W. 245; *Scheschy v. Binkley,* 124 Neb. 87, 245 N. W. 267; *Lincoln & Dawson County Irrigation District v. McNeal,* 60 Neb. 613, 83 N. W. 847; *Rogers v. City of Omaha,* 76 Neb. 187, 107 N. W. 214; *Lincoln Land Co. v. Village of Grant,* 57 Neb. 70, 77 N. W. 349; *Cathers v. Moores,* 78 Neb. 17, 113 N. W. 119; *Miles v. Holt County,* 86 Neb. 238, 125 N. W. 527; *O'Neill v. City of South Omaha,* 102 Neb. 836, 170 N. W. 174; *Nebraska Telephone Co. v. City of Red Cloud,* 94 Neb. 6, 142 N. W. 534; *Stickel Lumber Co. v. City of Kearney,* 103 Neb. 636, 173 N. W. 595; *Hustead v. Richardson County,* 104 Neb. 27, 175 N. W. 648; *Omaha Road Equipment Co. v. Thurston County,* 122 Neb. 35, 238 N. W. 919.

It appears that for certain services which are within the

enumeration of the duties of city attorney contained in section 17-516, Comp. St. 1929, as well as the city ordinance relating thereto defining the same, defendant Black was paid the sum of $1,783.30. This sum included official salary for the period commencing September 9, 1930, and terminating April 21, 1931, paid him at the rate of $200 a year. The remainder of this sum was made up from quarterly bills allowed Black for performing services of the same class, but performed by him when designated as, "Special Counsel for the City of Broken Bow," "City Legal Advisor," etc., and allowed and paid by the mayor and council by warrants drawn on the general fund as prescribed by the municipal code. We are convinced that the amounts thus allowed by the city and thus received by defendant Black were not in excess of the reasonable value of the services performed, and that the latter is entitled to retain the same.

The legality of the payments made to Black aggregating the sum of $2,020 as compensation is also challenged by plaintiff and appellee. These sums were received by Black under that portion of the written contracts providing for the payment to him of certain percentages of tax moneys received by the county treasurer from tax debtors in redemption from tax sale certificates covered by such collection contracts during a period commencing with the date of such contracts and terminating with the entry of decrees of foreclosure and sale. During the period last referred to, under unambiguous provisions of statute, the tax debtor rightfully paid the necessary redemption moneys to the county treasurer, upon the basis of which this compensation was determined. The county treasurer likewise made the necessary entries in the public records which effected a complete redemption from the tax sale involved and wholly nullified and rendered unenforceable the tax sale certificate thereof then outstanding, and thereupon, as required by official duties prescribed by statute, transmitted such funds to the public tax creditors in accordance with their respective interests therein, first deducting the statutory fees to which he was entitled. This procedure was followed in

every case whenever redemption was made. The evidence discloses, however, that with the exception of a single case no action had been instituted on the certificates of tax sale prior to the redemption therefrom, and in but a single instance the action to foreclose such certificates of tax sale had been instituted by the city and redemption had been effected thereafter, but prior to the entry of any decree in such proceeding. In the several acts performed in accomplishing the statutory redemption, of necessity Black had no part. Neither did this redemption form any part of the litigation which by the terms of his contract Black was to carry on. The statute with reference to the enforcement of tax sale certificates by foreclosure in equity provided only for the institution and prosecution of an action thereof by the owner. The performance of no previous acts as a tax collector was contemplated by the governing statutes and no compensation for such services by the tax creditor was authorized either expressly or by necessary implication. This omission, the good intentions of the parties in interest cannot supply. Even if the services here involved be deemed services performed, which involves an obvious impossibility, still the controlling rule would be, in view of the nature of the subject-matter, that "Any service rendered for which no statute authorizes a fee must be performed gratuitously." *Red Willow County v. Smith,* 67 Neb. 213, 93 N. W. 151.

It follows that the $2,020 was an unauthorized diversion of public funds, and that the plaintiff is entitled to recover the same from the defendants for the benefit of the municipality unlawfully paying out the same.

The abstracting costs amounting to $617 appear to have been reasonable compensation for services, as to costs reasonably and necessarily involved in the institution of the several actions to foreclose the tax liens involved in the present litigation. These costs were a proper expenditure in the accomplishment of a public purpose, and authorized as within the scope of the controlling statute providing for the institution by municipalities of foreclosure proceedings upon tax liens by them purchased.

There remains, in view of the invalidity of the two contracts in suit, the duty of determining the reasonable value of the professional services performed by defendant Black which are here in issue. These include fourteen cases involving 117 causes of action which have been reduced to decree, which has been carried into effect and properly sold, and from which gross proceeds amount to $23,749.66. Four of these cases, involving 37 causes of action, were originally reduced to decree prior to the expiration of the right of redemption, but thereafter these decrees were set aside and causes of action dismissed without prejudice. In one case it appears the action of foreclosure was commenced and dismissed before decree was entered therein.

The compilation of the partial abstract of title of the lands involved in these foreclosure cases was indeed a necessary service in order that the proper parties could be ascertained and the actions properly instituted. The charges for the same appear to be reasonable and the payment thereof was authorized as within the scope of the controlling statute empowering municipalities to purchase certificates of tax sales and to enforce the same by foreclosure proceedings.

Having heretofore determined that the defendant Black was entitled to compensation for services performed in the transactions on the basis of *quantum meruit*, we now address ourselves to determining the reasonable value of the professional services performed by Black in the matter of tax collection for the city of Broken Bow.

The applicable rule may be stated as follows: "In determining the value of attorney's fees, the following elements should be considered: The importance and result of the case; the difficulties thereof; the degree of professional skill, diligence and ability required and exercised; the experience and professional standing of the attorney, and the prominence and character of the parties where they affect the importance of the litigation; the questions of law raised, and the time and labor necessarily required in the performance of duties." *Prince v. Pathfinder Life Ins. Co.,* 133 Neb. 705, 276 N. W. 661. See, also, *In re Estate of*

*Moore,* 118 Neb. 568, 225 N. W. 705; *Hemmer v. Metropolitan Life Ins. Co.,* 133 Neb. 470, 276 N. W. 153.

The record contains an unusually complete description of the work actually performed, the issues involved, the methods employed, the results attained, the circumstances surrounding the transactions, and the personalities of the parties interested therein.

Applying the rule above quoted to the evidence in the record, after due consideration of all the testimony tendered by the respective parties, we fix the reasonable value of the professional services furnished by Black, as follows:

For services performed in fourteen cases, involving 117 causes of action, which were reduced to decree and the property sold at public sale for the sum of $23,749.66 gross, we determine their reasonable value to be $2,925 and no more.

For services performed in instituting four actions containing a total of 37 causes of action, prior to the expiration of the two-year period of redemption (Const. art. VIII, sec. 3), which were reduced to decree, but which decrees were, pursuant to direction of the mayor and council, set aside by the order of the district court and actions dismissed, we adjudge the reasonable value of such services to be the sum of $500.

For services performed in instituting an action to foreclose a tax sale certificate which was dismissed before decree of foreclosure was entered therein, because of redemption effected by the tax debtor, we determine their reasonable value to be the sum of $75.

Thus, it appears that, excluding from consideration the sum of $1,783.30 paid to Black upon bills rendered to the city of Broken Bow and $617 abstracting costs which we have approved, there has been unlawfully paid by the clerk of the district court to Black and received by him, out of the proceeds of the foreclosure sales here under consideration, the sum of $5,810.74; and also there has been deducted from the aforesaid proceeds of such sales by said clerk the additional sum of $2,816.09, which is now held by him for

Black, the payment of which has been enjoined by the terms of the decree appealed from in this case. Also, there has been unlawfully paid to Black the sum of $2,020 as hereinbefore determined. These amounts unlawfully deducted total the sum of $10,646.83, for which sum plaintiff is entitled to a judgment, subject, however, to a credit or offset in favor of defendant Black for $3,500 the determined reasonable value of the professional services performed by him under the two tax collection contracts in suit, and also an additional credit in the sum of $2,816.09, now held by the clerk of the district court, when this latter amount is paid by such clerk to the county treasurer entitled thereto.

The defendants challenge the right of plaintiff to prosecute this action, because it is claimed he is guilty of laches. The circumstances appearing in the record disclose no prejudice created by the delay. "If prejudice will not be occasioned to the defendant as a result of the assertion of the complainant's right, laches is not predicable of delay attending the commencement of the suit. * * * Where the complainant seeks to arrest a further invasion by the defendant of the complainant's rights, the suit may not be defended on the ground that the complainant has permitted or acquiesced in the defendant's conduct." 19 Am. Jur. 353, sec. 509. See, also, 21 C. J. 221.

It is insisted by defendants that it was incumbent upon the plaintiff to plead and prove that he made demand upon the officers of the city to bring this action. The case of *Scheschy v. Binkley,* 124 Neb. 87, 245 N. W. 267, is cited in support of this proposition. However, we are quite committed to the view that, where demand would be useless, one is not required to do a useless thing. In the recent case of *Taxpayers League of Wayne County v. Wightman, ante,* p. 212, 296 N. W. 886, we held in a taxpayer's action, and under facts quite comparable with the instant situation, the fact that the defendant city appeared and answered, and is resisting plaintiff, established as a fact that the making of a demand, such as is here insisted upon, would have been an idle ceremony.

The injunctions issued by the trial court, except as herein modified as to stated amounts, are in all respects sustained, and the decree entered in the district court, except as herein modified, is affirmed. Remanded for entry of judgment in conformity herewith.

AFFIRMED AS MODIFIED.